**William Edward CRITES, Appellant (Plaintiff/Respondent),**

v.

**Lisa Lynn ALSTON, f/k/a Lisa Lynn Crites, Appellee (Defendant/Petitioner).**

**No. 91–216.**

Supreme Court of Wyoming.

Aug. 7, 1992.

Paul R. Skog, Evanston, for appellant.

Mark W. Harris of Harris, Morton & Cowan, P.C., Evanston, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT,* and GOLDEN, JJ.

URBIGKIT, Justice.

Appellant William E. Crites (father) appeals a district court order holding him in contempt and awarding attorney's fees and costs to his ex-wife, appellee Lisa L. Alston (mother). The district court found that the father, by attempting to modify child custody in Texas, had breached an agreement between the parents to maintain jurisdiction of custody matters in Wyoming. Further, the district court held that the father's violation of the Wyoming divorce decree constituted an act of indirect criminal contempt.

We vacate the district court's finding of contempt and its judgment in award of attorney's fees.

### I.  ISSUES

The father raises two issues for review:

I. Can appellant be held in contempt of court for a violation of a court order which was not clear, specific, and unambiguous in its terms?

II. Did the district court lack subject matter jurisdiction thus rendering its contempt order null and void?

In counterpoint, the mother raises three issues:

* Chief Justice at time of oral argument.

## I.

When considering a willful violation of a court decree as to child custody, must the district court distinguish between civil and criminal contempt?

## II.

Did the district court lack subject matter jurisdiction to enter an order finding appellant in contempt and awarding appellee attorney's fees and costs?

## III.

Did the district court abuse its discretion in holding appellant in contempt for violation of a child custody decree and ordering appellant to pay appellee's attorney's fees and costs?

## II. FACTS

William Crites and Lisa Alston were married on July 30, 1985, with one son, Jacob Mitchell, born thereto. On February 13, 1987, the father filed for divorce in the Third Judicial District Court, Uinta County, Wyoming. Both the father in his complaint and the mother in her answer sought custody of their child. However, during the divorce proceeding, the parents stipulated to joint custody until such time as either parent moved from Uinta County. The resulting divorce decree granted joint custody to both parents pursuant to the stipulated agreement.

About a year and one-half later, in December 1988, the mother petitioned the district court for modification of the divorce decree. The mother sought primary custody and control of the child, subject to reasonable visitation on the part of the father. The father responded and counter-petitioned for primary custody. Initially, the district court left the child's joint custody in place because the district court failed to recognize a material change in circum-

stances justifying a change in custody in favor of either parent. Upon further review, however, the district court vacated its previous decisional letter and awarded primary custody to the father.[1] Shortly thereafter, the mother filed a motion for a new trial and for entry of specific findings of fact and conclusions of law. The district court granted the motion for a new trial and scheduled the trial for July 21, 1989.

On the day the new trial was scheduled to begin, the parents entered into a stipulation for modification of the divorce decree. Among other things,[2] the stipulation established that the father would have primary custodial rights until June 30, 1991, and that, during that time, secondary custodial and visitation rights would rest with the mother. As of July 1, 1991, primary custody would change to the mother and the father would have secondary custodial and visitation rights. The parties also agreed to add a new paragraph to the divorce decree:

(13) The parties stipulate and agree that the district courts of the State of Wyoming shall retain jurisdiction over the custody of the minor child, Jacob Mitchell Crites.

After reviewing the parties' stipulation, the district court incorporated all of the essential stipulated items into a modified divorce decree entered by the district court on August 18, 1989. During the period of time that these proceedings were taking place in Wyoming, the father remarried and moved with his son and new wife to their present home in Texas.

Early in 1991, the father began having second thoughts about the impending custody arrangement which would require his son to rejoin his ex-wife in Wyoming on July 1st of that year. Consequently, the father consulted a Texas attorney, followed her advice, and sought modification of the modified Wyoming divorce decree in a Tarrant County, Texas, district court.[3] The

---

1. It appears from the record that a final order was never entered regarding the father's primary custody at that stage of the proceeding.

2. The parents also stipulated to decree modification regarding child support, medical expense

obligations and allocation of federal tax deductions.

3. The record in this case is practically devoid of helpful documentation relating to what was filed and what transpired in the Texas modifica-

mother, who was also represented by Texas counsel, responded to the father's motion and raised an objection regarding jurisdiction. The mother sought dismissal of the father's motion for modification and an award of reasonable attorney's fees.[4]

The Texas court relied on that state's version of the Uniform Child Custody Jurisdiction Act (UCCJA) to decide the father's claim that an "automatic" shift of custody to the mother on July 1, 1991, was "unworkable and inappropriate under existing circumstances." On June 10, 1991, the Tarrant County, Texas, district court master entered a handwritten order which stated in part:

> The Court finds that Texas acquired jurisdiction over the child and that the State of Wyoming has not lost jurisdiction thus leaving both States with concurrent jurisdiction.
>
> The Court finds that the Decree of Wyoming is entitled to full faith & credit.
>
> The Court finds the parties['] Agreement to maintain jurisdiction of the child in Wyoming is valid & not contrary to public policy.
>
> The Court finds the parties['] Agreement does not confer jurisdiction on Wyoming as Wyoming originally had & still does have jurisdiction of the child.
>
> The Court finds the parties['] Agreement to maintain jurisdiction over custody matters in Wyoming was made in contemplation of further litigation; that the Agreement is valid on its face; & that such agreement of forum selection is prima facie valid.

*   *   *   *   *   *

> The Court finds that 11.64 of the [Texas Family Code] does not permit Texas to modify the custody decree as yet because Wyoming still has jurisdiction by an Agreement recognizable under the Texas UCCJA and because Wyoming has not yet declined to assume its jurisdiction.
>
> The Court finds that whichever forum assumes jurisdiction over the custody issue will cause an inconvenience to one of the parties. In the instant case the father is not only trying to circumvent the forum selection agreement but is also trying to modify the entire custody agreement of the parties while the mother has abided by the agreement & continually maintained her residence in the agreed forum State of Wyoming. The majority of the prospective witnesses for each party will probably come from their respective home states. In such an instance the burden of inconvenience should fall upon the person seeking to breach the agreements.
>
> Accordingly, it is Ordered that the [mother's] Plea To The Jurisdiction is

---

tion proceeding. The record contains only two relevant items: (1) a copy of a handwritten document entitled Master's Recommendation for Modification & Plea to the Jurisdiction and (2) a copy of the father's Motion to Modify Modified Decree of Divorce. Though the first document was signed and dated by the master who conducted the jurisdictional hearing in Tarrant County, Texas, it does not appear to have been file-stamped and, in that regard, its authenticity is subject to question.

Adding greater confusion to this case, the father's motion for modification, though signed by the father's Texas attorney and apparently having been file-stamped, was captioned "In the Interest of Jacob Mitchell Crites, A Minor Child, in the District Court of *Denton* County, Texas, 322 Judicial District." Without explanation and absent a request to supplement the record, the father has attached to his appellate brief copies of his signed and file-stamped Motion to Modify Modified Decree of Divorce as filed in the *Tarrant* County District Court as well as the mother's file-stamped but unsigned response entitled Respondent's Original Answer Subject to Special Appearance.

Although inclusion of documentation connected with the Texas proceeding within this appellate record is not essential to our disposition of this case, we remind counsel that ordinarily we will not consider that which is not properly contained within the record. *See Barron v. State*, 819 P.2d 412, 417 (Wyo.1991); *see also Chew v. Chew*, 821 P.2d 582, 583 (Wyo.1991). Attaching copies of the Texas pleadings to the appellant's brief does not satisfy the explicit requirements of W.R.A.P. 4.01. Counsel should not come to rely on documents attached to appellate briefs as a means of circumventing the express rules for making a record for purposes of appeal.

**4.** Cognizant of our admonition in the preceding footnote, we take judicial notice of the mother's request for attorney's fees contained in the copy of Respondent's Original Answer Subject to Special Appearance found attached to the father's brief. W.R.E. 201(f).

sustained, this cause is abated, and the State of Texas defers its jurisdiction to the State of Wyoming.

The order was silent as to the mother's request for attorney's fees. Because this record does not contain a transcript of the hearing to determine Texas' jurisdiction to modify custody, we are uncertain what discussion, if any, took place regarding the requested attorney's fees. More importantly, however, it is not our place nor is it necessary for us to make that determination prior to reaching a decision in this appeal.

While the Texas proceeding was on-going, the mother began a concurrent action which creates this appeal by filing in the Uinta County, Wyoming, district court a petition for an order requiring the father to show cause why he should not be held in contempt for failure to abide by the terms of the 1989 modified Wyoming divorce decree. The mother included a request for reasonable attorney's fees and costs incurred by her in bringing the Wyoming show cause petition and included the stock request of "other relief as the court deems proper."

The Wyoming district court issued an order for the father to show cause and directed him to appear for a rescheduled hearing on July 2, 1991. On May 24, 1991, the mother followed the show cause petition with another petition requesting modification of the modified divorce decree; termination of the joint custody relationship, and sole custody of the child. The mother supported these two petitions with an extensive and detailed memorandum regarding jurisdiction and child custody.

The father submitted a written answer to the mother's modification petition and a counter-petition claiming that it would be in the child's best interest if joint custody were terminated and sole custody were awarded to him subject to reasonable visitation for the mother. Essentially, as he had done in Texas, the father contended that the "automatic" shift in custody to the mother on July 1, 1991, would be detrimental to the child's best interests. The mother answered the father's counter-petition by arguing his lack of "clean hands" barred any proper assertion of a claim for sole custody.

Both parents, represented by counsel, appeared and testified in the Wyoming district court on July 2, 1991. Following the hearing, the district court filed its decision letter in which it reiterated the modified divorce decree provision stating that primary custodial rights were to transfer from the father to the mother on July 1, 1991. The court cited paragraph 13 of the modified divorce decree:

> (13) The District Courts of the state of Wyoming shall retain jurisdiction over the custody of the minor child, Jacob Mitchell Crites.

The decision letter also freely quoted from the Texas master's order determining that Wyoming had jurisdiction to determine custody, and then in its own conclusions, stated:

> The [father] has not only attempted to circumvent the forum selection agreement but he has also attempted to modify the entire custody agreement of the parties while the mother has abided by the agreement and continually maintained her residence in the agreed forum state of Wyoming. This Court agrees the majority of the prospective witnesses for each party will probably come from their respective home states; and that in such an instance, the burden of inconvenience should fall upon the person seeking to breach the agreement.

> Finally, the Court finds and concludes that the actions of the [father] in this case were not only in breach of the agreement of the parties, but in addition the actions were in violation of the Decree of this Court. The Court finds and concludes that the [father] has committed an act of indirect criminal contempt.

> W.S. 20–2–113 provides in pertinent part:

> "The court may, in addition to any assessment it may impose upon a finding that the parent is in contempt of court, award attorney's fees, costs, and such other and further relief as the court may deem necessary under the circumstances, to the parent aggrieved

by the violation of the court's decree, in order to enforce and require future compliance with its decree."

Accordingly, the [father] shall pay a fine in the sum of $1.00 payable to the Clerk of Court to be credited to the school fund for his acts of indirect criminal contempt. In addition, for his breach of the agreement of the parties, and to encourage future compliance with the agreement and decree, the [father] shall pay the [mother] the sum of $4,457.00 costs, expenses and attorney fees incurred by the [mother] in meeting the burden of defending against [father's] breach of the agreement.[5]

The resulting August 21, 1991 court order finding contempt and awarding attorney's fees and costs to the mother followed the decision letter in text and provides the basic issues for this appeal by the father.

## III. STANDARD OF REVIEW

■ We follow the same standard of review enunciated in other child custody and domestic relations contempt cases. In *Goss v. Goss*, 780 P.2d 306, 313 (Wyo.1989), we said that "[w]e will not disturb the decision of the trial court * * * in the absence of some serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion." *See also Deen v. Deen*, 774 P.2d 621 (Wyo.1989) and *Fanning v. Fanning*, 717 P.2d 346 (Wyo. 1986). On questions of law, we accord no special deference to, and are not bound by, a district court's decision. *Farr v. Link*, 746 P.2d 431, 433 (Wyo.1987). In *Connors v. Connors*, 769 P.2d 336, 341–42 (Wyo. 1989), we defined "judicial discretion" as it

relates to a contempt finding in a post-divorce proceeding. Judicial discretion is " ' "a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously * * *." ' " *Id.* (quoting *Igo v. Igo*, 759 P.2d 1253, 1255 (Wyo.1988) and *Martin v. State*, 720 P.2d 894, 897 (Wyo.1986)).

## IV. DISCUSSION

Following more than two hours of testimony and discussion at the July 2, 1991 show cause hearing, the Wyoming district court focused attention on its primary task, determining whether or not it had jurisdiction to hold the father in contempt for his futile attempt to modify child custody in a Texas court. After telling the mother's attorney that he needed to respond to the jurisdictional issue, the following colloquy took place:

> THE COURT: * * * [T]hat's really what is on my mind is whether or not I can make a finding in this case of a willful disregard of court orders. Because that's the nub of it. That's the foundational finding that I have to make. And I'm uncertain about that right now. I'm uncertain about it because of the language of this stipulation [paragraph 13 of the modified divorce decree—"The parties stipulate and agree that the district courts of the State of Wyoming shall retain jurisdiction over the custody of the minor child, Jacob Mitchell Crites."]—

---

**5.** The district court's finding that the mother had incurred approximately $4,457 in costs and attorney's fees in defending the Texas action is anomalous since the figure is approximately $300 less than the amount actually billed by the mother's attorneys. The documentation of costs and attorney's fees submitted to the district court at the July 2, 1991 show cause hearing reflected total costs in the mother's behalf of $4,756.57. Of the $4,756.57 amount, $3,208.32 was billed by the mother's Texas attorney and $1,548.25 was billed by the mother's Wyoming attorney. The father's Wyoming attorney stipulated to the reasonableness and accuracy of the fees and costs. We find no explanation in the

record for the $300 discrepancy between the amount billed by the attorneys and the lesser amount charged to the father by the district court judge.

It also appears from the record that the "lumping together" of fees pertaining to the Texas proceeding included charges by the mother's Wyoming attorney for the preparation of documents filed in the Wyoming district court—specifically, the mother's April 26, 1991 petition to show cause; her May 24, 1991 petition to modify the modified divorce decree; and her May 30, 1991 memorandum regarding jurisdiction concerning child custody.

[THE MOTHER'S ATTORNEY]: Do you want me to do that—

THE COURT: —because of the reasons I've enunciated on behalf of [the father's attorney]. Those reasons being that one interpretation is that the parties knew and recognized that under Wyoming law, under the Uniform Child Custody Jurisdiction Act, six months out of the state makes Texas the home jurisdiction for purposes of child custody decisions. And in order to give Wyoming at least equal standing with Texas, this language of the stipulation had to be inserted otherwise [the mother] was going to find herself in Texas. And it's one thing to give her some protection about going to Texas and another thing from prohibiting [the father] from starting there in the first place.

[THE MOTHER'S ATTORNEY]: Right.

THE COURT: It's one thing to give her a basis to object to Texas jurisdiction or to object to Texas exercising jurisdiction and another thing entirely to say, "You're prohibited from going to Texas courts, [father]."

We agree with the district court's identification of the dispositive issue—whether the district court could find the father in contempt for "willfully violating" a Wyoming court decree when he instituted the Texas custody proceeding. We disagree, however, with the district court's denouement. We do so for two primary reasons: (1) the district court erred as a matter of law in characterizing paragraph 13 of the modified divorce decree as a valid "forum selection clause" and (2) a basis for award of attorney's fees is not provided in this case in either the Texas or subsequent Wyoming proceedings.

A. *Forum Selection Clause*

■ In the district court's Order Finding Contempt and Awarding Attorneys Fees and Costs, the district court stated eight conclusions of law. Of the eight, four dealt with the parents' stipulation (para-

graph 13 of the modified divorce decree) to maintain jurisdiction over child custody in Wyoming:

2. The parties['] agreement to maintain jurisdiction of the minor child in Wyoming is valid and not contrary to public policy.

3. The parties['] agreement does not confer jurisdiction in the State of Wyoming as the State of Wyoming originally had, and still has, jurisdiction of the minor child.

4. The parties['] agreement to maintain jurisdiction of custody matters in Wyoming was made in contemplation of further litigation; the agreement is valid on its face; and such agreement of forum selection is prima facie valid.

5. The [father] has not only attempted to circumvent the forum selection agreement but has also attempted to modify the entire custody agreement of the parties while the [mother] abided by the agreement and continually maintained her residence in the agreed forum, the State of Wyoming.

Beyond the bare assertion that the parents' stipulation (paragraph 13) created a valid forum selection agreement, the district court did not set forth a legal basis for its "forum selection" characterization. However, from our review of the record in this case, it appears that the district court was influenced by a 1989 Illinois case cited and discussed by the mother in a memoranda submitted to the district court prior to the July 2, 1991 hearing.[6]

The case, *In re Marriage of Hilliard*, 178 Ill.App.3d 620, 127 Ill.Dec. 671, 533 N.E.2d 543 (1989), involved an Illinois divorce with subsequent joint custody of two children. The father, who filed for the divorce in Illinois and continued to reside in that state, and the mother, who had moved to California shortly before the divorce and continued to reside there, stipulated to the following provision in their divorce decree:

The parties agree that, provided [the father] is residing in Illinois, any further post-decree proceedings with respect to

6. Neither of the parties cited *In re Marriage of Hilliard*, 178 Ill.App.3d 620, 127 Ill.Dec. 671, 533 N.E.2d 543 (1989) in appellate briefing and the case was not mentioned at oral argument.

the rights and duties of the parties herein, including custody, support, property, indebtedness, or modification thereof, or otherwise, shall only be filed in Illinois. *Id.* 127 Ill.Dec. at 672, 533 N.E.2d at 544.

Two years after the divorce, the mother attempted to transfer jurisdiction of a modification proceeding brought by the father in Illinois to a court in California. The Illinois court refused the mother's request and, on appeal, the Illinois appellate court affirmed. The *In re Marriage of Hilliard* court stated:

> We find that the trial court's order refusing to transfer jurisdiction is correct because the parties' settlement agreement, which was incorporated into the dissolution judgment, provides that any further post-decree proceedings shall only be filed in Illinois, provided [the father] resides in Illinois. The rules regarding the interpretation of settlement agreements are the same as those which apply to contracts generally, and the primary objective is to give the agreement its plain and ordinary meaning according to the intent of the parties. * * * A forum selection clause is *prima facie* valid and should be enforced unless the opposing party shows that enforcement of the clause would be unreasonable under the circumstances and would essentially deprive him of his day in court. * * * If both parties freely entered into the agreement contemplating such inconvenience should there be a dispute, one party cannot successfully argue inconvenience as a reason for rendering the forum clause unenforceable.

*Id.* 127 Ill.Dec. at 672–73, 533 N.E.2d at 544–45.

In this case, we find that the district court's presumed reliance on *In re Marriage of Hilliard* is misplaced. Although the quoted portion of the *In re Marriage of*

*Hilliard* opinion accurately reflects general principles of forum selection law, it does not follow that the decidedly different wording stipulated to by the parties in paragraph 13 in this case falls under the *In re Marriage of Hilliard* umbrella.

We find support in *In re Marriage of Bueche*, 193 Ill.App.3d 594, 140 Ill.Dec. 566, 550 N.E.2d 48 (1990), a post-*In re Marriage of Hilliard* Illinois decision which dealt with a mother's attempted modification of a joint custody arrangement. In *In re Marriage of Bueche*, the court considered the effect of a "retention of jurisdiction" clause in a Michigan divorce decree.[7] Specifically, the court determined that the clause would not prevent an Illinois trial court from exercising jurisdiction in order to modify visitation.

> Finally, [father] argues that the retention of jurisdiction clause in the original judgment acts as a forum selection clause and constitutes an agreement that the Michigan circuit court would be the only court invoked to resolve disputes arising from the agreement. [Father] notes a forum selection clause was upheld in *In re Marriage of Hilliard*, * * *.
>
> We do not find *Hilliard* controlling in this case. In *Hilliard*, the Illinois circuit court upheld the forum selection clause of an Illinois decree by noting that an Illinois court retains jurisdiction over custody determinations unless it concedes jurisdiction (Ill.Rev.Stat.1987 ch. 40, par. 2104(b) (the Marovitz Amendment)). Since the Marovitz Amendment is not part of the Uniform Child Custody Jurisdiction Act but strictly an Illinois enactment, it would not apply to a Michigan court modifying a Michigan decree where the Michigan court would have otherwise lost jurisdiction. Moreover, even a State designated in a forum selec-

---

7. Although the *In re Marriage of Bueche* opinion does not set forth the specific wording of the "retention of jurisdiction" clause, it does describe the provision by stating:

> The decree also provided that the Michigan court would retain jurisdiction over the parties and the subject matter until all provisions of the decree were performed.

*In re Marriage of Bueche*, 140 Ill.Dec. at 567, 550 N.E.2d at 49.

By comparison, paragraph 13 of the parents' modified divorce decree appears to be even less substantial, explicit and exacting than the "retention of jurisdiction" clause argued unsuccessfully in *In re Marriage of Bueche*.

tion clause could decline jurisdiction if it no longer had sufficient contacts to support jurisdiction. \* \* \* Nor would the Marovitz Amendment preclude a transfer of jurisdiction under *forum non conveniens.* \* \* \* Although a forum selection clause is a factor in a *forum non conveniens* determination \* \* \*, *the clause in the parties' decree is not a forum selection agreement but merely a retention of jurisdiction clause. By contrast, the clause in* Hilliard *was an explicit agreement by which the parties bound themselves to file all post-decree proceedings in Illinois only.*

*In re Marriage of Bueche,* 140 Ill.Dec. at 569–70, 550 N.E.2d at 51–52 (emphasis added).

Had the mother in the present case no longer been living in Wyoming when the father sought to modify custody in the Texas proceeding, then Texas would have had exclusive jurisdiction to determine child custody on the basis of its "home state" status, 28 U.S.C. § 1738A(c)(1) & (2)(A)(i) (the federal Parental Kidnapping Prevention Act (PKPA)),[8] and the fact that Wyoming's continuing jurisdiction under 28 U.S.C. § 1738A(d) would have lapsed. As a simple "retention of jurisdiction" provision, paragraph 13 of the parties' modified divorce decree would *not* provide a Wyoming court with jurisdiction to make a custody determination *unless* the child or one of his parents continued to reside in the state and/or maintain the necessary "significant connections" to sustain subject matter and in personam jurisdiction.

We hold that the district court's finding that paragraph 13 constitutes a valid forum selection provision is erroneous as a matter of law.

**B. *Wyo.Stat. § 20–2–113(a) (Supp. 1992)***

■ Having determined that paragraph 13 was not a valid forum selection provision, we look next at the district court's authority to find the father in contempt. Wyo.Stat. § 20–2–113(a) states in part:

The court has continuing subject matter and personal jurisdiction to enforce or revise the decree concerning the care, custody, visitation and maintenance of the children as the circumstances of the parents and the benefit of the children requires. The court may, upon its own motion or the motion of either parent, require a parent to appear before the court and show just cause why the parent should not be held in contempt of the court, *upon a showing that the parent has willfully violated the court's decree* as to the care, custody, visitation and maintenance of the children.

(Emphasis added.)

The father draws our attention to numerous cases from other jurisdictions standing for the proposition that before there can be a "willful violation" of a court decree, there must first exist a valid court order which is "clear, specific and unambiguous." We find support for the father's argument in several cases referenced in his appellate brief. For example, in *Cunningham v. Eighth Judicial Dist. Court of State of Nev., In and For Clark County,* 102 Nev. 551, 729 P.2d 1328, 1333–34 (1986), the Nevada Supreme Court stated:

An order on which a judgment of contempt is based must be clear and unambiguous, and must spell out the details of compliance in clear, specific and unambiguous terms so that the person will readily know exactly what duties or obligations are imposed on him.

---

**8.** 28 U.S.C. § 1738A provides in part:
   (c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—
   (1) such court has jurisdiction under the law of such State; and
   (2) one of the following conditions is met:
   (A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State[.]

Similarly, in *Southwest Gas Corp. v. Flint-kote Co.–U.S. Lime Div.,* 99 Nev. 127, 659 P.2d 861, 864 (1983) (quoting *Ex Parte Slavin,* 412 S.W.2d 43, 44 (Tex.1967)), the same court stated:

> Generally, an order for civil contempt must be grounded upon one's disobedience of an order that spells out "the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed on him."

In this case, paragraph 13 of the modified divorce decree simply stated that "[t]he District Courts of the state of Wyoming shall retain jurisdiction over the custody of the minor child, Jacob Mitchell Crites." This statement, as a portion of the divorce decree, did not impose upon the father an affirmative obligation or duty to attempt custody modification *only* in a Wyoming court; nor did the provision impose an affirmative obligation or duty *not* to attempt to modify child custody in a state other than Wyoming. We hold as a matter of law that paragraph 13 cannot be construed as a clear, specific and unambiguous court order or decree. Consequently, a "violation" of paragraph 13, whether "willful" or otherwise, cannot be enforced with the district court's contempt power.

Further, preventing the father in this case from attempting to modify custody in

Texas would contradict the type of parental behavior and legal proceedings we endorsed in *Quenzer v. Quenzer,* 653 P.2d 295 (Wyo.1982), *cert. denied* 460 U.S. 1041, 103 S.Ct. 1436, 75 L.Ed.2d 794 (1983). *Quenzer* involved a mother and father divorced in Texas who, over time, fought custody modification battles in several different states. When the Wyoming modification proceeding began, the mother and children were living in Wyoming and the father was living in Texas; thus, Wyoming was the "home state" and the mother was seeking to modify a Texas modified divorce decree in Wyoming. In that narrow respect, *Quenzer* is the factual mirror image to this case. In deciding *Quenzer,* we found nothing wrong with the mother's behavior in attempting to modify custody in the present "home state."

At the time the father sought custody modification in Texas, Texas was the child's "home state" for purposes of custody determination under both federal and state law. 28 U.S.C. § 1738A(b)(4)[9]; V.T.C.A., Family Code § 11.52(5) (1986); Wyo.Stat. § 20–5–103(a)(v) (1987). However, "home state" status alone is not sufficient to confer modification jurisdiction on a state that was not the original decree state when one of the parties continues to reside in the original decree state.[10] As-

---

**9.** 28 U.S.C. § 1738A(b)(4) defines "home state" to mean:

> [T]he State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons. Periods of temporary absence of any of such persons are counted as part of the six-month or other period[.]

Both the Texas and Wyoming versions of the UCCJA define "home state" in substantively identical terms. *See* V.T.C.A., Family Code § 11.52(5) and Wyo.Stat. § 20–5–103(a)(v) (1987).

**10.** 28 U.S.C. § 1738A(d) states:

> The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be

met and such State remains the residence of the child or of any contestant.

28 U.S.C. § 1738A(c)(1)(E) states:

> (c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—
> (1) such court has jurisdiction under the law of such State; and
> * * *
> (E) the court has continuing jurisdiction pursuant to subsection (d) of this section.

The Texas and Wyoming versions of the UCCJA do not contain provisions comparable to the PKPA "continuing jurisdiction" clause in 28 U.S.C. § 1738A(c)(1)(E):

28 U.S.C. § 1738A(c)(1)(E) thus creates exclusive continuing jurisdiction in the original decree state—in this case, Wyoming since the mother continued to reside in Wyoming following entry of the divorce decree.

We do not consider here the differing effect on basic jurisdiction to modify under PKPA if *neither* party continued to reside in the original decree state. 28 U.S.C. § 1738A(d).

sessment by the Wyoming district court of contempt for institution of the Texas home state petition to modify under these circumstances was legally unjustified and will be reversed. It may have been a losing effort, but it did not constitute indirect criminal contempt.

### C. Assessment of Texas and Wyoming Attorneys' Fees and Costs Against the Father in This Proceeding

■ In its eighth and final conclusion of law in the Order Finding Contempt and Awarding Attorneys Fees and Costs, the district court stated:

> 8. The Court has the power, pursuant to Wyo.Stat. Section 20–2–113 (1977, as amended), in addition to any assessment it may impose upon the [father] for being in contempt of court, to award attorney's fees, costs and such other and further relief as the Court may deem necessary under the circumstances of the case to a parent aggrieved by a violation of the Court's Decree in order to enforce and require future compliance with its decree.

Since we reverse the district court's finding of contempt, we are left with the question of whether attorney's fees and costs can be charged to the father *in the absence* of a contempt finding. The relevant portion of Wyo.Stat. § 20–2–113(a) states:

> The court may, *in addition to* any assessment it may impose upon a finding that the parent is in contempt of court, award attorney's fees, costs, and such other and further relief as the court may deem necessary under the circumstances, to the parent aggrieved by *the violation of the court's decree,* in order to enforce and require future compliance with its decree.

(Emphasis added.)

The mother argues that under this sentence in Wyo.Stat. § 20–2–113(a), it is not necessary to find a parent in contempt prior to awarding attorney's fees and costs. She suggests that if the wording between the first two commas is deleted, then the result allows courts discretionary statutory authority to award attorney's fees, costs and other necessary relief to an aggrieved parent.

A careful analysis of the total amount of legal fees approved by the district court to be charged to the father include:

1. Texas attorney's fees and costs to defend the father's Texas modification proceeding;

2. The Wyoming attorney's fees and costs to assist the Texas attorney in defending against the father's Texas modification proceeding;

3. The Wyoming attorney's fees and costs to bring this contempt proceeding to show cause to collect for attorney's fees and costs incurred in Texas; and

4. The Wyoming attorney's fees and costs to pursue the Wyoming decree modification proceeding.

This record is non-informing about action of the Texas judge in either expressly approving or denying the requested attorney's fees in any aspect of the Texas modification litigation. *See* n. 4, *supra.* Essentially, this Wyoming proceeding superimposes the mother's request for a sequential Wyoming district court award of attorney's fees that could have been, and may even have been, adversely decided by the Texas district court. In the absence of at least a properly determined status of contempt as one possible vehicle for attorney's fees assessment, we find no jurisdictional basis in Wyoming to award attorney's fees for the Texas proceeding to either the Texas or Wyoming attorneys.[11]

A further complexity may be engendered by a recent Texas appellate case which, in a reverse fashion, may call into question the explicit validity of the district court decree in this case. *See Reppond v. Blake,* 822 S.W.2d 759 (Tex.App. 1992). In a footnote, the appellate court stated in reference to Texas custody law where Texas was forum, "once the child establishes a new home state, the continuing jurisdiction of the Texas court making a prior custody determination ceases." *Id.* at 760 n. 1.

**11.** The litigants have actively briefed and argued whether, under Wyoming law, a finding of contempt pursuant to Wyo.Stat. § 20–2–113(a) is a requirement for the district court to make an award of attorney's fees in divorce/child custody post-divorce decree litigation. We decline

Since we have determined that a legal right to pursue change of custody in the home state did exist sufficient to insulate the litigant from contempt retribution in Wyoming, we determine that if the effort fails, assessment of attorney's fees should be resolved by the Texas court and not in a subsequent Wyoming proceeding unless a proper contempt determination (e.g., indirect criminal contempt) is to be established in this jurisdiction.

With reversal of the Wyoming contempt determination, a basis for assessment of the Wyoming attorney's fees in the Wyoming show cause proceeding also fails. The last item is Wyoming attorney's fees for the mother to attempt Wyoming modification. Although lack of itemization and differentiation within this record would cause some assessment difficulty in any event, we fail to find a legal basis for award since apparently the Wyoming district court did not order the relief requested of further child custody decree modification.

### D. *Procedural Sufficiency of Contempt Determinations*

With recognition of our disposition of the primary contempt determination issues in this case, we do not reach the question of whether the district court lacked subject matter jurisdiction due to insufficient criminal procedural safeguards in a criminal contempt proceeding. We simply note in passing that the district court found the father in indirect criminal contempt. Having examined the record and recognizing the conspicuous absence of procedural safeguards, we are reminded of the concluding paragraph in *United Mine Work-*

*ers of America, Local 1972 v. Decker Coal Co.*, 774 P.2d 1274, 1284 (Wyo.1989):

Our analysis of W.R.Cr.P. 41(b) and these cases leads us to conclude the district court failed to follow the necessary procedure in issuing the contempt citations to the individual contemnors and the union contemnors. This was, as we have found, a criminal contempt proceeding and should have been conducted as an independent criminal action. It was not, and the district court, therefore, never obtained jurisdiction to proceed. We hold the contempt orders against the individuals and the unions null and void.

*See, e.g.*, W.R.Cr.P. 42 (formerly W.R.Cr.P. 41).

### V. CONCLUSION

Having fully examined the record in this case, we find nothing to demonstrate that the father was in willful violation of a valid court decree.[12] Similarly, we have determined that the district court lacked a proper basis for the award of attorney's fees and costs in the absence of a finding of contempt.

The district court's finding of contempt and its judgment in award of attorney's fees are vacated.

the invitation to decide that broad issue in this case and under these facts by analysis which could extend to circumstances widely different in future cases.

12. We note, however, that in the Order Finding Contempt and Awarding Attorneys Fees and Costs, the district court never actually stated that the father *willfully* violated the divorce decree. Wyo.Stat. § 20–2–113(a) specifically states that the parent may be held in contempt "upon a showing that the parent has *willfully* violated the court's decree as to the care, custo-

dy, visitation and maintenance of the children." The district court's only reference to the father's "violation" of the divorce decree tends to equate the father's Texas custody modification filing with both "breach of agreement" and "violation of the decree." It goes without saying that "breach of agreement" may well occur in a situation absent the requisite "willfulness." Exercise of a constitutional right to litigate may not necessarily create the breach of agreement in itself either.