2001 WY 79

**Patrick Adam ERHART, Appellant (Defendant),**

v.

**Jane Ann EVANS, formerly Jane Ann Erhart, Appellee (Plaintiff).**

No. 00–284.

Supreme Court of Wyoming.

Aug. 27, 2001.

Donald J. Keenan, Keenan Law Office, P.C., Riverton, Wyoming, for appellant.

Gay Woodhouse, Attorney General, Michael L. Hubbard, Deputy Attorney General, Sue Chatfield, Assistant Attorney General, for appellee.

Before: LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

KITE, J.

[¶ 1] Patrick Adam Erhart (the father) appeals the order in which the district court found three prior district court orders were issued pursuant to contempt proceedings and did not modify his child support obligation and entered a judgment of child support arrearages against him. We affirm.

## ISSUES

[¶ 2] The father frames the issues for review as follows:

    A. Did the court below err in finding that the support amount due from [the father] to [the mother] had not been modified to reduce [the father's] child support obligation from $300.00 per month to $250.00 per month?

    B. Did the court below err in calculating the amount of child support due?

The Department of Family Services (DFS), on behalf of Jane Ann Evans (the mother), rephrases the issues:

    I. Whether the district court's judgment and order dated August 31, 2000, affirming there was no modification of the original child support order, should be upheld.

    II. Whether the district court correctly calculated the amount of child support due.

## FACTS

[¶ 3] We preface this factual review by noting that the underlying proceedings and resultant district court contempt orders are somewhat confounding. This is due in part to the record being limited to a presentation of pleadings with no transcripts. It is also due in part to the manner in which the district court orders were written.

[¶ 4] The father and the mother were divorced pursuant to a decree entered on June 10, 1977. Two children were born as issue of the marriage, the first on March 15, 1973, and the second on April 28, 1976. By the terms of the decree, the father was required to pay $150 per month per child in support for a $300 total monthly obligation.

[¶ 5] Subsequent to the divorce, the father failed to consistently and fully pay his child support obligation, and the mother petitioned the court to initiate contempt proceedings against him. The first of these resulted in a November 9, 1977, order which adjudged the father in contempt for failure to pay support in accrued arrearages of $1,640 and sentenced him to ten days in jail. The order further provided the contempt and execution of sentence could be purged upon: (1) payment of $220 to the clerk of court by November 1, 1977; (2) payment of $220 to the clerk of court each and every month thereafter with $20 to be applied to the $1,640 arrearage; and, (3) once the arrearage amount was satisfied, the sum of $300 per month to be paid to the clerk of court each month thereafter. The order also specifically provided as follows:

    This Court's previous Order ordering the [father] to pay to [the mother] the sum of $150.00 per month per child as and for support of the minor children of the marriage is not modified by this Order and this Order shall not be construed to find that [the father's] present ability to pay is $220.00 per month.

[¶ 6] On April 26, 1983, the father was found in contempt for his failure to comply with the November 1977 order. Additional

child support arrearages were found in the amount of $1,320, and he was sentenced to thirty days in jail. Again the order provided the contempt could be purged and the sentence suspended upon: (1) payment of $500 to the clerk of court by May 1, 1983;[1] (2) payment of $250 to the clerk of court each and every month thereafter with $20 to be applied to the initial $1,640 arrearage (November 9, 1977, order) and $30 to be applied to the new additional $1,320 arrearage; (3) payment of $250 per month to continue until such time as the $20 applications equaled the $1,640 arrearage, and at that time the entire $50 would be applied toward the $1,320 arrearage until satisfied; and, (3) once the arrearage amounts were satisfied, the sum of $300 per month to be paid consistent with the November 9, 1977, order. The order further provided, in the event the payments were not made, the clerk of court would immediately issue a bench warrant for the father's arrest to serve his sentence.

[¶ 7] Pursuant to a Warrant of Attachment issued on November 9, 1983, the father was arrested for failure to make the payments specified in the April 1983 contempt order. The mother and the father entered into and filed a stipulation on December 22, 1983, which provided in part that, after the additional $225 arrearage was satisfied in full, "[the father] agrees to pay and [the mother] agrees to accept $250.00 per month in accordance with the court order dated April 25, 1983." The court entered an order on December 23, 1983, approving the stipulation and ordering compliance with the stipulated payment terms. Those terms provided the father would pay $275 per month commencing December 1, 1983, and each month thereafter until the new arrearage of $225 was satisfied. Upon such satisfaction, the payments would reduce to $250 per month and

be applied in accordance with the court's April 1983 order. The order also provided, in the event the father failed to make payment, the clerk of court would immediately issue a bench warrant for his arrest and confinement pending further proceedings.

[¶ 8] The mother again asked the court to initiate contempt proceedings against the father in August of 1987 alleging that, although the arrearages ordered to be paid in the previous three court orders had been satisfied, the father was $12,950 in arrears on his total $300 per month child support obligation established in the original 1977 divorce decree.[2] A hearing was apparently scheduled for September 24, 1987, but was postponed upon the district court's request for briefing on the issue of retroactive modification of support orders. The mother filed a memorandum on the issue in January of 1988, and the father filed a reply in May of 1988, but the record does not reflect a court order resulting from this contempt proceeding.

[¶ 9] DFS filed a Notice of Assignment of rights to child and spousal support in June of 1996 and a Petition for Order to Show Cause in May of 1998 alleging the father had accrued arrearages of $12,860. The record reflects in August 2000 DFS filed a Corrected and Amended Memorandum Brief on the issues of whether there was a modification of the original divorce decree, the age of emancipation of the children, and the arrearage balance due. The text of this document indicates DFS filed a Memorandum Brief on May 12, 1999, and made argument to the district court on August 30, 1999; however, no pleading or transcript is contained in the record as certified on appeal. The corrected brief asserts the father owed a balance of $20,790.30 in child support.[3]

---

1. Distribution of this payment was specified to address (1) the mother's attorney fees in the amount of $237.65; (2) $200 child support for the month of May 1983; (3) $20 for past arrearages stated in the November 9, 1977, order; and (4) $42.35 for the $1,320 arrearages.

2. The mother filed a Request for Order to Show Cause and Citation for Contempt on August 11, 1987. She alleged therein that the father was in arrears $100 per month from July 1977 through January 1986 and $50 from February 1986

through July 1987 for a total arrearage of $12,950.

3. DFS alleged the father owed $58,790 (there was an apparent typographical error in the document on this figure) total combined child support obligation for the two children from the date of the decree, had paid $36,049.70 with a resulting balance due of $22,740.30, and was entitled to $1,950 credit for support payments made pursuant to a juvenile docket, for a total support arrearage due of $20,790.30.

[¶ 10] On August 31, 2000, the district court issued a Judgment and Order by which it held the three prior contempt orders did not constitute proper modifications of the $150 per month per child support obligation established in the original 1977 divorce decree and the father owed $20,790.30 in arrearages giving credit for $1,950 paid pursuant to a juvenile case. The district court entered judgment against the father in the sum of $20,790.30, and the father appealed to this court.

## STANDARD OF REVIEW

[¶ 11] The standard of review enunciated in other child custody and domestic relations contempt cases is applicable to this matter. *Crites v. Alston,* 837 P.2d 1061, 1066 (Wyo.1992).

> In *Goss v. Goss,* 780 P.2d 306, 313 (Wyo. 1989), we said that "[w]e will not disturb the decision of the trial court ... in the absence of some serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion." *See also Deen v. Deen,* 774 P.2d 621 (Wyo.1989) and *Fanning v. Fanning,* 717 P.2d 346 (Wyo. 1986).

*Id.; see also Rogers v. Rogers,* 973 P.2d 1118, 1121 (Wyo.1999). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Belless v. Belless,* 2001 WY 41, ¶ 6, 21 P.3d 749, ¶ 6 (Wyo.2001); *see also Vaughn v. State,* 962 P.2d 149, 151 (Wyo. 1998). We must determine whether the trial court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious. *Belless,* ¶ 6.

## DISCUSSION

[¶ 12] The father contends that, through the course of the multiple contempt proceedings and court orders, and in particular the December 1983 stipulation and related court order, the original divorce decree support obligation of $150 per month per child ($300 total) was modified and reduced to $250 per month. The district court found: "All of these orders related to contempt proceedings. In 1987, the arrears and contempt issues arose again but were never decided. None of the orders constituted a proper modification."

[¶ 13] The issue has been made confusing by the manner in which the three district court contempt orders were framed. The November 1977 order found the father in contempt and in arrears and then set out a *lower* child support payment with a designated portion to be applied to accrued arrearages. Once the arrearages were satisfied, the order mandated a return to the $300 per month payment. The order explicitly stated it did not constitute a modification or a determination that the father's present ability to pay was the lower support amount. However, it failed to clarify whether arrearages would continue to accrue for the difference between the original support amount and the lowered amount. The April 1983 order was drafted in much the same way, but instead of the "no modification" language it provided "thereafter, [the father] shall pay ... $300.00 per month *consistent with the November 9, 1977 order.*" (Emphasis added.) The December 1983 order again used similar lowered payment language, provided no reference to modification, and stated, "Upon the new arrearage of $225.00 being satisfied, *the monthly support payment shall reduce to $250.00 per month and [be] applied in accordance with the court's April 25, 1983 order.*" (Emphasis added.) So, in a peculiar and confusing manner, the third order related back to the second order, and the second order related back to the first. And none explained whether arrearages would continue to accrue for the difference between the original support amount and the lowered amount set out in each individual order. However, the first contempt order in the chain explicitly rejected modification of the divorce decree order for support.

[¶ 14] In *Connors v. Connors,* 769 P.2d 336, 348–49 (Wyo.1989) (citations omitted and emphasis added), we considered the requirements for modification:

> While the general rule is that a court has continuing jurisdiction to modify the custody and support aspects of its own decree,

**546**

such jurisdiction is bestowed upon the court only through proper petition by one of the parents in the underlying action pursuant to W.S. 20–2–113(a). W.S. 20–2–113(a) provides in relevant part:

> In granting a divorce or annulment of a marriage, the court may make such disposition of the children as appears most expedient and beneficial for the well-being of the children.... *On the petition of either of the parents,* the court may revise the decree concerning the care, custody, visitation and maintenance of the children as the circumstances of the parents and the benefit of the children require[ ]. [Emphasis added.]

The effect of the foregoing statute, as it applies to the instant case, is that it authorizes the court, "[o]n the petition of either of the parents," to revise and alter its decree. *The clear language of this section instructs that the court may not, of its own initiative, modify its own order with respect to, among other things, a child support obligation absent a proper petition by one of the parents requesting such modification.*

*Thus, a petition of one of the parents seeking modification of an existing order is a statutory prerequisite to the court's power to act.*

[¶ 15] Neither party contends that a petition for modification was ever filed. The certified record provided is an incomplete compilation of the pleadings from the various contempt actions without transcripts of any of the court proceedings. It contains no petitions requesting modification by either party. "Under our statute the obligation of support is a continuing one; it is also one which is at all times subject to change *upon proper request to the court for modification or clarification contingent upon a change in circumstances* of the parties." *Redman v. Redman,* 521 P.2d 584, 587 (Wyo.1974) (footnote omitted and emphasis added). The party who seeks to have a child support order modified has the burden of showing that a substantial or material change in circumstances has occurred since the initial decree was entered. *Wood v. Wood,* 964 P.2d 1259, 1262 (Wyo.1998). The contempt orders do not reflect any such petitions nor do they make necessary findings as to a change in circumstances warranting modification. These legal prerequisites for modification cannot be extinguished by parental stipulation to reduced payments. The law precludes parties from bargaining away the funds intended for the exclusive benefit of their children. *Hammond v. Hammond,* 14 P.3d 199, 202 (Wyo.2000); *Hurlbut v. Scarbrough,* 957 P.2d 839, 842 (Wyo.1998) (a child support obligation does not belong to the custodial parent, and that parent does not have the authority to bargain it away).

[¶ 16] W.R.C.P. 15(b), which allows amendments to pleadings to conform to the evidence, is appropriate in some circumstances when the parties have expressly or impliedly consented to consideration of a modification by the court even though a petition to modify has never been filed. *Strahan v. Strahan,* 400 P.2d 542, 544 (Wyo.1965). This court allowed such an amendment in *Strahan,* which was initiated as a contempt proceeding but, through presentation of significant evidence of changed circumstances, evolved into a modification hearing. In that case, the district court specifically advised the parties of its intent to consider the issue of modification on the basis of the evidence received. After this specific notice, the parties did not object, and their consent could be inferred. However, the circumstances of the instant case do not warrant a similar application of W.R.C.P. 15(b). The record, devoid of transcripts or other evidence, does not support the conclusion that the parties consented to the consideration of the modification issue by the district court. *Connors,* 769 P.2d at 349. Nor does the record provide any indication the district court intended to treat the contempt proceedings as modification proceedings. Further, none of the orders set out the essential findings as to changed circumstances. Therefore, without a petition for modification, evidence of consent to modification, and appropriate findings of changed circumstances, the contempt orders cannot be converted by application of W.R.C.P. 15(b) to orders modifying the original support order.

[¶ 17] Public policy also supports the conclusion that no modification occurred in this case. By implication, the father is requesting retrospective modification of his child support obligation. Despite many years of

inconsistent payments leading to multiple contempt proceedings and arrearage judgments as well as incarceration, he now asks this court to find that his support obligation was modified by the December 1983 order. As we noted in *Parry v. Parry*, 766 P.2d 1168, 1170 (Wyo.1989), allowing retrospective modifications may encourage default. A party could decide to stop making payments and allow arrearages to accrue with the hope the court will cancel or reduce the accrued payments owed and/or the continuing child support obligation. We decline to establish such a precedent and affirm the district court's determination that the child support obligation established in the 1977 divorce decree was not modified by the three subsequent court orders issued in contempt proceedings.

▮ [¶ 18] The father also argues that the district court's determination of arrearages was incorrect and not supported by any evidence. In this regard, his failure to ensure a sufficient record for review by this court is conclusive.

In order to find an abuse of discretion, we must review all the evidence heard by the district court. Father, as appellant here, bears the burden of providing this court a complete record on which to base a decision. The hearing in this case was unreported. Father failed to present a settlement of the record as provided in W.R.A.P. 3.03. In the absence of a complete record, we must "accept 'the trial court's findings as being the only basis for deciding the issues which pertain to the evidence. In the absence of anything to refute them, we will sustain the trial court's findings, and we assume that the evidence presented was sufficient to support those findings.'" *Weiss v. Pedersen*, 933 P.2d 495, 498 (Wyo. 1997) (quoting *Willowbrook Ranch, Inc. v. Nugget Exploration, Inc.*, 896 P.2d 769, 771–72 (Wyo.1995)).

*Thomas v. Thomas*, 983 P.2d 717, 721 (Wyo. 1999) (some citations omitted); *see also Ahearn v. Ahearn*, 993 P.2d 942, 949 (Wyo. 1999); *Jordan v. Brackin*, 992 P.2d 1096, 1099 (Wyo.1999); *Whitfield v. Whitfield*, 756 P.2d 1345, 1347 (Wyo.1988). As noted above, the certified record is a partial collection of the pleadings filed during the course of this extended proceeding. Although several hearings were held, including one during the most recent contempt proceeding, no hearing transcripts were provided in the record. Likewise no W.R.A.P. 3.03 statement was provided for this court to consider. The father, as the appellant, bears the burden to bring a sufficient record to this court upon which a decision can be based. *Wood v. Wood*, 865 P.2d 616, 617 (Wyo.1993). On the basis of this record, we can discern no serious procedural error or violation of a principle of law. *Crites*, 837 P.2d at 1066. Nor can we identify any "clear and grave abuse of discretion" in such a vacuum. *Id.* Similar to the circumstances of *Thomas*, 983 P.2d 717, we are compelled to conclude the evidence presented was sufficient to support the district court's findings, and we affirm the judgment entered against the father in the sum of $20,790.30.