2004 WY 14

**Constance SMITH and Donald Smith, Appellants (Plaintiffs),**

v.

**Danielle J. PAIZ, Appellee (Defendant).**

**No. 03–47.**

Supreme Court of Wyoming.

Feb. 26, 2004.

Representing Appellant: Sue Davidson of Aspen Ridge Law Offices, P.C., Cheyenne, Wyoming.

Representing Appellee: Julie Nye Tiedeken of Tiedeken & Scoggin, P.C., Cheyenne, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

HILL, Chief Justice.

[¶ 1]   Constance and Donald Smith filed a negligence action against Danielle J. Paiz (Paiz) seeking to recover damages arising out

of an automobile accident. Prior to trial, the district court issued an order limiting the testimony of Connie Smith's (Smith) treating physicians to factual matters only because Smith had failed to timely designate them as expert witnesses. Finding no abuse of discretion, we affirm.

## ISSUES

[¶ 2]   Smith frames the issue on appeal as follows:

> Was reversible error committed when the trial court prohibited the treating health-care providers of Connie Smith from testifying to all facts of the condition and treatment of Connie Smith, including but not limited to diagnosis and prognosis?

Paiz phrases the issue differently:

> Did the Trial Court abuse its discretion by prohibiting witnesses who had not been listed as experts from giving expert opinions on diagnosis, treatment and prognosis for [Smith] and limiting their testimony to factual matters?

## FACTS

[¶ 3]   On December 17, 2001, Smith filed a negligence action against Paiz. Smith alleged that Paiz negligently operated her motor vehicle causing an accident resulting in injury. Smith's husband was also a party, claiming loss of consortium. The district court issued a Scheduling Order, which required Smith to designate her expert witnesses:

> The Plaintiff shall designate expert witnesses and provide the Defendant with a brief outline of the testimony of each expert by April 15, 2002.

On April 15, Smith filed a Designation of Plaintiff's Expert naming one expert, Dr. Kanter. Pursuant to the Scheduling Order, Paiz filed her Designation of Expert Witnesses on May 24, 2002. Included in Paiz's designation were two of Smith's treating physicians, Dr. Fischer and Dr. Rangitsch.

[¶ 4]   On June 21, 2002, Smith filed her Pretrial Memorandum, which listed six of her treating physicians as witnesses: Dr. Barnes, Dr. Vernon, Dr. Reckling, Dr. Greene, Dr. Rangitsch, and Dr. Fischer. In the memorandum, Smith stated that these healthcare providers would testify about Smith's treatment and "current condition, and prognosis for her future health care needs." Paiz responded with a Motion to Strike the named doctors as witnesses on the grounds that they had not been designated as expert witnesses pursuant to the court's Scheduling Order. Paiz claimed the late designation prejudiced her because "all of [Smith's] strategy in the case and decisions with regard to [Paiz's] own expert witness designation and independent medical examinations" were based on Smith's designation of only Dr. Kanter as an expert.

[¶ 5]   Paiz reiterated her position in a Supplement to Motion to Strike Witnesses, and Smith responded with a Memorandum in Opposition to [Smith's] Motion to Strike Witnesses. Relying on W.R.C.P. 26(b)(4),[1]

---

1.   **Rule 26.   General provisions governing discovery.**

     . . . .

     (b) *Discovery scope and limits.*—Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

     . . . .

     (4) Trial Preparation: Experts.—Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

     (A) (i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts

and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

     (ii) A party may depose any person who has been identified as an expert whose opinions may be presented at trial. Upon motion, the court may order further discovery by other means. Such deposition or other discovery is subject to such restrictions as to scope and such provisions, pursuant to subdivision (b)(4)(C), concerning fees and expenses as the court may deem appropriate.

     (B) A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the

Smith contended that she did not have to designate her treating physicians as expert witnesses because they had not acquired or developed their knowledge or opinions in anticipation of litigation or trial and, accordingly, were not experts. She also argued that no prejudice attached to Paiz because of the failure to designate the treating physicians as experts. Smith stressed that Paiz was in possession of all of her medical records and had deposed several of the witnesses. Smith concluded that since Paiz had access to the records on which the treating physicians' opinions would be based and had the opportunity to depose each of them, she could not then claim prejudice.

[¶ 6] On July 17, 2002, the district court issued its Order on Motions. The court found that Smith's failure to properly designate the witnesses as experts precluded her from offering any opinion testimony requiring expertise from them. The court ordered that the doctors could testify as fact witnesses about their treatment of Smith but, as fact witnesses, they were not allowed to provide expert opinions, including diagnoses, prognoses or determinations of causation requiring medical expertise. The court did allow Smith to elicit expert opinion testimony from her two treating physicians, who had been designated as experts by Paiz, so long as a proper foundation was established.

[¶ 7] The matter proceeded to trial and the jury found Paiz to be 60 percent at fault and Smith 40 percent. The jury set Smith's damages at $2,500, which was reduced to $1,500 under the comparative fault statute. The jury set the damages of Smith's husband, Donald Smith, at zero dollars. Smith has appealed.

## DISCUSSION

[¶ 8] Smith contends that the district court erred in barring her treating physicians from providing expert opinions, including diagnoses, prognoses or any determination relating to causation requiring medical expertise. Pointing to W.R.C.P. 26(b)(4), Smith argues that the test to determine whether a witness is an expert is whether the facts known and the opinions held by the witness were acquired or developed in anticipation of litigation or trial. Since her treating physicians acquired their knowledge and formed their opinions based on their relationship with her and not in anticipation of litigation or trial, Smith concludes that the witnesses were not "experts" and thus she was not required to designate them as such. Smith argues that she was prejudiced by the exclusion of this testimony because her claims for pain and suffering and the necessity of future medical treatments could not be explained adequately to the jury without it. She points out that Paiz had access to all of her medical records upon which the witnesses' testimony and opinions would be based and had deposed several of them. Therefore, since Paiz knew the nature of the facts and the opinions based thereon that were to be provided by these witnesses, she could not have suffered any prejudice.

[¶ 9] An "expert" witness is a witness entitled to give opinion testimony. W.R.E. 702.[2] Treating physicians may be fact witnesses, and if they offer an opinion, they may be expert witnesses also. Their status depends on the content of their testimony: If they only testify as to what they observed and did within the physician-patient relationship, then they would be fact wit-

---

party seeking discovery to obtain facts or opinions on the same subject by other means.
(C) Unless manifest injustice would result:
(i) The court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under subdivisions (b)(4)(A)(ii) and (b)(4)(B); and
(ii) With respect to discovery obtained under subdivision (b)(4)(A)(ii) the court may require, and with respect to discovery obtained under subdivision (b)(4)(B) the court shall require, the party seeking discovery to pay the other party a fair portion of the fees and

expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert.

2. **Rule 702. Testimony by experts.**

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

nesses; if, in addition to testifying to the facts, the treating physicians offered an opinion, then they would be expert witnesses.

**[¶ 10]** What distinguishes a treating physician when testifying as an expert from an expert retained in anticipation of litigation or for trial is not the content of his or her testimony, "but the context in which he became familiar with the plaintiff's injuries that were ultimately the subject of litigation, and which form the factual basis for the medical opinion." *Schreiber v. Estate of Kiser*, 22 Cal.4th 31, 91 Cal.Rptr.2d 293, 989 P.2d 720, 723 (1999). The distinction between a treating physician and a retained expert is important only within the context of the discovery process. Rule 26(b)(4) carves out an exception to the general rules established by Rules 26(a) and 26(b)(1) with respect to expert opinion testimony acquired or developed in anticipation of litigation. *Chakales v. The Hertz Corporation* 152 F.R.D. 240 (N. Dist. Ga.1993). Experts, such as treating physicians, who have information that was not developed or acquired in anticipation of litigation are subject to the general discovery provisions of Rules 26(a) and 26(b)(1). Rule 26(b)(4) provides limitations on the discovery of information from experts who acquired their knowledge specifically in anticipation for litigation or for trial. The Rule provides different standards for discovery when the retained expert will be used as a trial witness, Rule 26(b)(4)(A), and when the retained expert was specifically employed for trial purposes but will not testify at trial, Rule 26(b)(4)(B). *See* 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure: Civil 2d §§ 2029–34 (1994 & 2003 Supp.).

**[¶ 11]** The federal district court in the aforementioned *Chakales* decision addressed a similar argument to that posited by Smith here. That court observed:

Rule 702 of the Federal Rules of Evidence describes an expert as one who has "scientific, technical, or other specialized knowledge [which] will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. The rule provides further that "a witness qualified as an expert by knowledge, skill,

experience, training or education, may testify thereto in the form of an opinion or otherwise". *Id.* Based on plaintiffs' description of the testimony expected to be given by the treating physicians listed in Attachment F–1 of the proposed Pretrial Order, plaintiffs clearly intend to elicit scientific opinion testimony, regarding a fact in issue, in order to assist the trier of fact, and intend to elicit such testimony from persons specially qualified to render such opinions.

Based on the foregoing, the Court concludes that the treating physicians at issue are "experts" pursuant to the applicable rule of evidence and that Rule 26(b)(4) does not alter in any way the definition of "expert" for purposes of discovery. Indeed, even without an examination of case law, the clear language of the rule is at odds with plaintiffs' argument that it limits the definition of an expert to one whose opinion was acquired or developed in anticipation of litigation. That is, Rule 26(b)(4) addresses discovery of the opinions of experts that are "otherwise discoverable" *and* that were "acquired or developed in anticipation of litigation." ... By its own terms, the rule envisions the existence of experts whose opinions were not acquired or developed in anticipation of litigation.

*Chakales*, 152 F.R.D. at 245; *see also Clark v. Raty*, 137 Idaho 343, 48 P.3d 672 (2002); and *Lee v. Knutson*, 112 F.R.D. 105 (N.D.Miss.1986).

**[¶ 12]** In support of her position, Smith relies on our decision in *Wardell v. McMillan*, 844 P.2d 1052 (Wyo.1992). In that case, the defendants appealed a district court protective order prohibiting them from deposing one of the plaintiff's treating physicians regarding his expert opinion on the issues of causation and standard of care. *Id.* at 1065–67. The protective order limited the scope of the treating physician's deposition to the factual circumstances related to the plaintiff's condition and treatment. The defendants argued that the doctor's expert opinion should have been discoverable because the plaintiff waived any privilege by filing suit. After holding that the treating physician's opinion was not privileged, we nevertheless upheld

the protective order based upon the circumstances of the case including the fact that the plaintiff had never designated the doctor as an expert witness for trial which made it unnecessary for the defendants to depose him regarding his expert opinion for purposes of cross-examination. *Id.* at 1067. We also noted that the doctor was a treating physician who was not "retained or specially employed" by the plaintiff in anticipation of trial, so his expert testimony was not discoverable under Rule 26(b)(4)(B). *Id.*

[¶ 13] The *Wardell* case does not advance Smith's argument. Indeed, our decision in that case merely serves to highlight the distinction that Rule 26 draws between experts retained specifically in anticipation of litigation and other experts for discovery purposes. The treating physician was not designated by the *Wardell* plaintiff as an expert apparently because there was no intent to use the doctor as an expert witness during trial. The treating physician *could* have been an expert witness but the plaintiff simply chose not to utilize him as such. That fact distinguishes *Wardell* from the situation at hand where Smith clearly intended to use her treating physicians in an expert witness capacity.

[¶ 14] A treating physician is, by definition, an expert witness if asked to provide opinion testimony. Rule 26(b)(4) is irrelevant and inapplicable and does not provide any justification for Smith's failure to timely designate her treating physicians as experts. Rule 26(b)(4) does not somehow magically convert a treating physician offering opinion testimony into a lay witness. *Lee*, 112 F.R.D. at 107–08. The record shows that Smith intended to elicit expert medical testimony from her treating physicians relating to diagnoses, prognoses and causation. The district court's Scheduling Order required Smith to designate her expert witnesses and provide Paiz with a brief outline of the testimony of each expert by April 15, 2002. Smith failed to comply with the district court's order.

[¶ 15] The question that remains is whether the district court's remedy—the prohibition on the treating physicians from testifying as to their opinions and restricting

them to factual testimony—was appropriate. A ruling on the admission or exclusion of expert witness testimony based on a violation of a pre-trial order is within the trial court's discretion, and we will not overturn the decision absent a showing of an abuse of that discretion. *Winterholler v. Zolessi*, 989 P.2d 621, 624–25 (Wyo.1999); *Oukrop v. Wasserburger*, 755 P.2d 233, 237–38 (Wyo.1988).

> "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Byerly v. Madsen*, 41 Wash.App. 495, 704 P.2d 1236 (1985); *Vaughn v. State*, 962 P.2d 149, 151 (Wyo.1998) (quoting *Martin v. State*, 720 P.2d 894, 897 (Wyo.1986))."

*Winterholler*, 989 P.2d at 624–25 (quoting *Rogers v. State*, 971 P.2d 599, 601 (Wyo. 1999)). In *Winterholler*, we set out the following factors for consideration when determining whether a party's supplementation of its disclosures after the conclusion of expert discovery is fair under the circumstances:

(1) whether allowing the evidence would incurably surprise or prejudice the opposing party;

(2) whether excluding the evidence would incurably prejudice the party seeking to introduce it;

(3) whether the party seeking to introduce the testimony failed to comply with the evidentiary rules inadvertently or willfully;

(4) the impact of allowing the proposed testimony on the orderliness and efficiency of the trial; and

(5) the impact of excluding the proposed testimony on the completeness of the information before the court or jury.

*Winterholler*, 989 P.2d at 628 (citing *Dada v. Children's National Medical Center*, 715 A.2d 904, 909 (D.C.1998)). The decision from which we adopted these factors explained their application:

> The development of this list of factors represented an attempt to strike a balance between the "concern for judicial economy" and the "strong judicial and societal

preference for determining cases on the merits." [*Abell v. Wang,* 697 A.2d 796, 800 (D.C.1997) ] (citing *Johnson v. Lustine Realty Co.,* 640 A.2d 708, 709 (D.C. 1994))... . The list is not exclusive. The trial court may consider other factors that affect the balance in question, taking into account the status of the case at the time of the request to reopen [discovery]. For example, the third factor's reference to failure to comply with "evidentiary rules" does not preclude the court from considering failure to comply with other procedural requirements. Similarly, the fourth consideration can be expanded to consider the orderliness and efficiency of not only the trial itself but also the court's overall handling of the case and, in appropriate situations, of the court's calendar. In particular cases or circumstances, other factors may come into play. [Footnote omitted]

... Within the analysis of "willfulness," for example, the court may consider the reasonableness of the party's explanation for failing to meet the deadline, as well as any pattern of noncompliance. *See Abell, supra,* 697 A.2d at 802–03 (explaining that the plaintiff in that case "had no prior history as a dilatory plaintiff"). In addition, when considering whether allowing the evidence would incurably surprise or prejudice the opposing party, the court may consider the behavior of the opposing party in complying with scheduling orders. Parties who have missed deadlines and been lax in complying with the scheduling orders themselves may have a difficult time convincing the court that they will be prejudiced by a delay caused by the opposing party, while parties who have been diligent in maintaining the schedule will have a stronger argument for prejudice. *See Abell, supra,* 697 A.2d at 802 ("The fact that defendants filed their own witness list late further mitigates the prejudice attributable to [plaintiff].").

Finally, as we explained in *Abell,* although "the trial court still must consider 'the totality of circumstances' of each case," the more rigorous and formal track on which civil cases are now placed allows "the trial court [to] accord greater weight than previously allowed for prejudice

caused by delay to the overall administration of justice." *Id.* (citing *Van Man v. District of Columbia,* 663 A.2d 1245, 1248 (D.C.1995)). As this court has explained,

> [n]oncompliance with court orders and rules may cause the system to bog down and may adversely affect other litigants. When a plaintiff is personally responsible for this type of delay, he or she prejudices not only the defendant but also the ability of other persons—persons that are doing what is necessary to follow the rules—to utilize the system.

*Perry v. Sera,* 623 A.2d 1210, 1219 (D.C. 1993) (referring to a plaintiff's failure to comply with discovery orders).

*Dada,* 715 A.2d at 909–10. Keeping these considerations in mind, we turn to the question before us.

■ [¶ 16] The district court did not set out any reasons for its ruling restricting the trial testimony of Smith's undesignated experts. Ideally, the court should have done so. Nevertheless, support for the court's decision is clearly discernable from the record. In her Motion to Strike Witnesses, Paiz set out how Smith's failure to designate her treating physicians as experts would prejudice her:

> Counsel for Defendant made decisions with regard to who she would list as expert witnesses and decisions with regard to whether to conduct independent medical examinations based on Plaintiff's expert witness designation. Dr. Kanter [Smith's sole designated expert] gave his opinion that there were several injuries and complaints which the Plaintiff has which he could not say were related to the accident in question. Given Dr. Kanter's opinion, counsel for Defendant did not undertake any further discovery with regard to some of the unrelated problems which were treated by various doctors. Plaintiff has now listed in her Pretrial Memorandum medical care providers to give expert witness testimony, including opinions with regard to her current condition and prognosis for the future. It appears that she is going to use these witnesses to testify with regard to causation of the injuries.

. . . It is unfairly prejudicial to now allow Plaintiff to designate five new expert witnesses which had not been previously designated and the Court should enter its Order striking said witnesses and disallowing any testimony from said witnesses.

Furthermore, in her Supplement to Motion to Strike Witnesses, Paiz noted that Smith had merely identified her treating physicians and indicated that they would provide expert testimony at trial but without setting forth a description of the substance of their testimony.

[¶ 17] The prejudice identified by Paiz is manifest on the record. Smith did not identify her treating physicians as experts within the time limits established by the Scheduling Order. Smith did not file a motion to allow a late designation of these witnesses on her volition and identified them only in response to an interrogatory from Paiz. Smith never provided a "brief outline of the testimony" expected from her treating physicians as required by the Scheduling Order. Furthermore, Smith's intent to use these witnesses as experts was not disclosed to Paiz until she filed her Pretrial Memorandum on June 21, 2002, barely a month before the scheduled trial date of July 30, 2002. To require Paiz to prepare for the testimony of *six* additional experts within the time remaining for trial would be to impose an extraordinary and unreasonable burden upon her. In contrast to the prejudice Smith's failure to timely designate her expert witnesses caused Paiz, the prejudice to Smith from the district court's decision to restrict testimony from those witnesses was slight. The court's order allowed the treating physicians to testify as fact witnesses. Furthermore, Smith still had the testimony of her designated expert,

and the court's order allowed Smith to use two of her other treating physicians who had been designated as experts by Paiz, so long as she laid the proper foundation.

[¶ 18] When we consider the foregoing within the context of the factors we have laid out, it is clear that given the nature and scope of Smith's noncompliance with the Scheduling Order, allowing Smith's witnesses to testify as experts would have "incurably prejudiced" Paiz. Smith, on the other hand, possessed ample resources despite the court's ruling to present the merits of her claim to the jury, and so the prejudice to her was significantly mitigated. It also weighs against Smith that there is the implication, contained within the record, that her motivation for using her treating physicians as experts appears to be due to the apparent weakness of the testimony concerning some of her medical claims that was proffered by her retained expert, Dr. Kanter. In addition, we note that allowing the proposed expert testimony would have had a negative impact on the orderliness and efficiency of the trial given the minimal amount of time that remained between Smith's submission of her Pretrial Memorandum identifying her witnesses and commencement of the trial. Accordingly, we conclude that, under the circumstances, the district court did not abuse its discretion.

[¶ 19] Affirmed.