2004 WY 64

Rose FETZER and Raymond P. Fetzer, Appellants (Plaintiffs),

v.

J.D. DAYLEY & SONS, INC., Appellee (Defendant).

J.D. Dayley & Sons, Inc., Appellants (Defendant),

v.

Rose Fetzer and Raymond P. Fetzer, Appellees (Plaintiffs).

Nos. 03–155, 03–156.

Supreme Court of Wyoming.

June 7, 2004.

154

---

Representing Appellants Rose Fetzer and Raymond P. Fetzer: Ronald P. Jurovich of Thermopolis, Wyoming; and Randy L. Royal of Greybull, Wyoming. Argument by Mr. Jurovich.

Representing Appellee J.D. Dayley & Sons, Inc.: Laurence W. Stinson of Bonner Stinson, P.C., Powell, Wyoming; and John R. Goodell of Racine, Olson, Nye, Budge & Bailey, Pocatello, Idaho. Argument by Messrs. Stinson and Goodell.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

HILL, Chief Justice.

[¶ 1] Rose Fetzer (Fetzer) and her husband, Raymond, filed a claim of negligence against J.D. Dayley & Sons, Inc. (Dayley) seeking damages for personal injuries suffered by Fetzer when she stepped into a hole that had been drilled to locate utility lines. In Case Number 03–155, they appeal an order of the district court that prohibited them from introducing portions of their treating orthopedic surgeon's proffered expert testimony regarding future medical care and expenses on the grounds that Fetzer had failed to timely disclose the testimony. Finding no abuse of discretion, we affirm.

[¶ 2] In Case Number 03–156, Dayley appeals the failure of the jury instructions given by the district court to include consideration of the conduct of a non-party actor when apportioning comparative fault. Based on our holding in Case Number 03–155, we dismiss Dayley's appeal.

## ISSUES

[¶ 3] In Case Number 03–155, Fetzer sets forth the following statement of the issues:

1. Was it an abuse of discretion for the trial court to have excluded plaintiffs' testimony and exhibits relative to future medical expenses[?]

2. Was it an abuse of discretion to deny the plaintiffs the testimony of their treating physician relative to post-traumatic arthritis developed by the Plaintiff Rose Fetzer but not discovered until October 30, 2002[?]

3. Was it an abuse of discretion when the trial court changed it's pretrial order on the second day of trial relative to certain exhibits[?]

4. Was it an abuse of discretion for the trial court to allow defense counsel to solicit testimony from the plaintiffs' treating physician that Plaintiff Rose Fetzer had met her treatment goals and had healed remarkably well[?]

5. Was it an abuse of discretion to have allowed defense counsel to represent to the jury that the plaintiff had healed completely with no after-effect, when plaintiffs' counsel had been precluded from addressing those issues[?]

6. Was it an abuse of discretion on the part of the trial court to deny plaintiffs' motion for new trial[?]

7. Did the defendant through its cross-examination "open the door" to the use of evidence relative to future medical expenses and arthritic changes in Rose Fetzer's knee[?]

Dayley responds with two issues:

1. Whether the trial court's decision to exclude certain portions of the trial testimony of Dr. James Randolph relative to future medical care and costs for Appellant/Cross–Appellee Rose Fetzer * * * was an abuse of discretion when the proffered trial testimony directly contradicted the doctor's deposition testimony and Fetzer failed to supplement the deposition or provide specific notice of the change to Appellee/Cross–Appellant J.D. Dayley & Son's, Inc. * * *.

2. Whether the trial court's decision to exclude from evidence Dr. James Randolph's clinic visit note regarding treatment of Fetzer, dated November 11, 2002, which note was generated

subsequent to the doctor's deposition, was an abuse of discretion and, if so, whether its exclusion was harmless error.

In Case Number 03–156, Dayley frames the issue as:

Whether the trial court's refusal to instruct the jury that it should consider the comparative fault, if any, of non-party actor Mid–States Consultants, Inc., pursuant to W.S. § 1–1–109 (Lexis Nexis 2003), was prejudicial error.

Fetzer concurs with Dayley's statement of the issue.

## FACTS

[¶ 4] Dayley was contracted by TCT West, Inc., a telecommunications company, to work on a construction project that included the installation of underground telephone lines in Basin, Wyoming. Mid–States Consultants, Inc. (Mid–States) was hired by TCT West to supervise the installation of the lines to ensure compliance with job specifications. In order to locate existing utility lines, holes were drilled using pressurized jets of water. In early July 2001, several of these locator holes were drilled in an alley adjacent to Fetzer's residence. On July 9, 2001, Fetzer accidentally stepped into one of the locator holes causing a tibial plateau fracture.

[¶ 5] On August 24, 2001, Fetzer filed a Complaint alleging that Dayley had negligently failed to mark the locator hole or erect some sort of guard or protector to warn the public. Fetzer requested damages for bodily injury, loss of enjoyment of life, and pain and suffering. Fetzer's husband, Raymond, joined the suit and sought to recover damages for loss of consortium.

[¶ 6] On May 30, 2002, Fetzer filed a Plaintiffs' Designation of Expert Witnesses. Among the experts designated was Fetzer's orthopedic surgeon:

Dr. James G. Randolph, [address and phone number]. Dr. Randolph is expected to testify and offer his opinion concerning diagnosis, treatment and prognosis of the Plaintiff Rose Fetzer following her injury on July 9, 2001. Dr. Randolph is expected to testify utilizing his medical records as well as the medical records from the Washakie Medical Center in Worland, Wyoming. He is expected to testify as an orthopedic surgeon, concerning his communications with the patient, his observations, and he will testify consistent with any deposition that he may give. No deposition has yet been taken. He will testify and offer his opinion regarding the severity of the injury and damage sustained by Rose Fetzer.

Dr. Randolph will be designated as a fact witness, but he is herein designated as an expert witness. As an expert in orthopedic surgery, he will testify concerning the transfer of the patient from Midway Clinic in Basin, his initial examination of Rose Fetzer, his impression and opinion of the injury together with its severity, the surgical procedure that he utilized, his consultations with Rose Fetzer, and her prognosis. He will testify concerning future medical expenses which Rose Fetzer may incur including joint replacement and the estimated cost of that joint replacement of approximately $27,000.00. He will also testify that Rose Fetzer will have arthritis at the point of injury.

Dr. Randolph's deposition was taken on July 11, 2002. To the surprise of Dayley, the doctor stated that at that time there was no indication that Fetzer would need to incur any future medical expenses:

Q: Okay. And at that time, just so I am clear, it was January 24th, 2002, you had your last office visit with Rose Fetzer?

A: Yes.

Q: And the purpose of that visit; was it to complain about anything relevant to the surgery, or was it just a routine checkup?

A: Routine follow-up visit.

Q: And as part of that routine follow-up visit on January 24th, 2002, was there anything that caused you concern about the surgical procedure and her recovery from it?

A: Not specifically. I think that she was doing well at that time. My concern, as I had stated previously, would have to do with any patient that has had a severe intra-articular fracture involving a weight-bearing joint, would be the potential for

that joint to go on and develop post traumatic arthritis.

Q: But at the time of the January 24th, 2002, visit there was no indication of any problem, including the arthritis that you described?

A: That's correct.

. . . .

Q: Doctor, I know [co-counsel] touched on this but I am just curious, can you tell us, does Mrs. Fetzer suffer from any percentage of disability, either permanent or partial, as a result of the injury of July 9th, 2001?

A: According to the information that I have, again she was last seen in this office on January 24th, and she was possibly having some occasional discomfort in the knee, but the range of motion looked good. Her strength looked good. I would say there was not a significant physical impairment of her extremity at that time.

Q: Is it safe to say, and once again I apologize, I know these are lawmen's terms, but as you know Mrs. Fetzer today, based upon your last visit in late January of 2002, she is in good physical shape and not suffering from any permanent or partial disability, and she should be able to lead a life just as she had prior to July 9th, 2001?

A: I think that is correct. I still would indicate to you that the development of post traumatic arthritis is something that can occur several months to even two years or more following an injury. And my concerns would still lie along those lines, that even though in January she appeared to be doing well, I don't know that she—She is still at some risk for developing post traumatic arthritis in that knee.

Q: But as we sit here today in your deposition, you are not aware of any such condition, nor has anything been brought to your attention?

A: That is correct.

Q: Doctor, if I could—Let me ask you this and phrase it this way. You have indicated, apparently, that right now there is *no indication* that she would suffer from

any arthritic condition as a result of this incident of July 9th of 2001?

A: What I indicated to you was that her knee was doing well the last time she was seen in this office. I do think she is at some risk of developing post traumatic arthritis in that knee in the future.

Q: I know it is difficult, but you can't tell us with any reasonable degree of specificity or medical probability that she will, in fact, suffer such a condition in the future?

A: That is correct.

[¶ 7] Subsequently, Fetzer filed a Designation of Fact Witnesses on September 16, 2002. Dr. Randolph is identified as a fact witness who will testify about his examination and treatment of Fetzer. The designation also states that the doctor will give an opinion concerning "future expenses, and future disability, if any, of Rose Fetzer."

[¶ 8] On November 11, 2002, three weeks before the trial was scheduled to commence, Fetzer met with Dr. Randolph for the first time since January of that year. After examining Fetzer, Dr. Randolph noted "posttraumatic arthritis involving the lateral compartment of the left knee" and that this condition was causing Fetzer pain. He concluded, "if the patient has failed more conservative treatment and continues to have severe pain in the left knee, total knee arthroplasty may be necessary at some point in the future." Fetzer notified Dayley of the visit and provided them with a copy of Dr. Randolph's note summarizing his examination and conclusions on November 14, 2002, as part of the filing of her pretrial memorandum. The memorandum also included a description of the testimony each of Fetzer's witnesses was expected to provide at trial. For Dr. Randolph, the pretrial memorandum stated that he would "testify concerning future medical expenses including those for treatment, surgery and rehabilitation." A subsequent statement was more conditional in nature: "He will testify concerning future medical expenses which Rose Fetzer may incur including joint replacement and the estimated cost of that joint replacement. He will also testify that Rose Fetzer has arthritis at the point of injury." Fetzer also pro-

vided to Dayley an x-ray of her knee taken during the November 11 examination.

[¶ 9] The case proceeded to trial on December 4, 2002. During voir dire, Fetzer's counsel mentioned that a doctor would testify, and that "we will ask him if he can testify to a degree of reasonable medical probability, which is the preponderance test" when asking the potential jurors if any of them had a "problem with that approach to the proof on the medical?" During his opening statement, Fetzer's counsel went into more depth on what was expected from Dr. Randolph during the trial:

> Dr. Randolph will go through and tell you of his visits with Rose Fetzer. He will tell you of the subsequent x-rays and what he found significant about those. And he will tell you that she has arthritis in that knee now, that it was not there before—and he'll point that out to you—and that, to a reasonable degree of medical probability, she's going to have to have a knee replacement.
>
> . . . .
>
> Dr. Randolph will testify to his portion of the future medical bills and what costs will be done in his clinic, surgery fee and the—the outpatient rehabilitation. We will call the chief financial officer from the Washakie Memorial Hospital—or Medical Center, they call it now—who will testify to what the hospital costs are for the knee replacement and for the Home Health therapy that is done as you go along.

After opening statements were completed, Dayley objected to the doctor's proffered testimony. Dayley argued that it had not been provided timely notice that the doctor's testimony had changed since his deposition, in which he had stated that he could not determine with a reasonable degree of specificity or medical probability that Fetzer would develop arthritis in her knee or would require knee replacement surgery. Dayley also contended that since Dr. Randolph's deposition testimony was favorable to them on the issue of future medical damages, they decided not to designate their own expert for rebuttal. Dayley moved for the exclusion of the undisclosed testimony or, in the alternative, for a continuance of the trial.

[¶ 10] The next day before the trial resumed, the court heard additional argument from counsel before concluding that it was obviously a surprise to the defense that Dr. Randolph would be testifying to future medical care requirements with a reasonable degree of medical probability and that testimony was inconsistent with his deposition. The court held that Dayley was entitled to sufficient notice to prepare to respond to the testimony and that Fetzer had failed to provide that timely notice. Accordingly, the court ruled that all testimony and exhibits relating to future medical care and its cost were excluded. The exclusion applied to testimony from Dr. Randolph relating to the presence of arthritis in the knee, testimony on the cost of knee replacement surgery, and proposed exhibits consisting of Dr. Randolph's note from Fetzer's November 11th examination and the x-rays of her knee taken at that time. The court also instructed the jury that it could not award future medical costs.

[¶ 11] After trial, the jury returned a verdict finding Fetzer 25 percent negligent, Dayley 70 percent negligent, and unknown persons 5 percent negligent. The jury awarded Fetzer $38,895.00 in medical expenses, $25,000.00 in pain and suffering, and $15,000.00 for loss of enjoyment of life. They awarded no damages for physical disability nor on Fetzer's husband's claim for loss of consortium. After taking her percentage of fault into account, the district court entered a judgment in her favor for $55,226.91.

[¶ 12] After the judgment was entered, Fetzer filed a motion for a new trial citing the prejudicial effect of the court's ruling excluding her evidence on future medical expenses. The court denied the motion. Fetzer has appealed the jury's verdict, the judgment, and the denial of her motion for a new trial in Case Number 03–155.

[¶ 13] At trial there was evidence presented that Mid–States was responsible for inspecting the project and ensuring compliance with safety requirements set out in the contract between Dayley and TCT West. Dayley's position was that Mid–States bore some responsibility for the accident because

it negligently failed to perform its duties. Dayley submitted two jury instructions that placed Mid–States, a non-party actor, on the jury verdict form for the assessment of comparative fault. The district court rejected the proposed jury instructions, and Mid–States was not included on the instructions given to the jury. In Case Number 03–156, Dayley appeals the court's failure to include Mid–States on the jury verdict form. Dayley states that its appeal is conditional on this Court's decision in Case Number 03–155: If the jury's verdict is affirmed, Dayley requests that its appeal be dismissed.

## STANDARD OF REVIEW

[¶ 14] We review rulings excluding proffered expert testimony based upon either a violation of a pre-trial order under W.R.C.P. 16(f)[1] or as unfairly prejudicial under W.R.E. 403[2] because of surprise for an abuse of discretion. *Winterholler v. Zolessi*, 989 P.2d 621, 624–25 & 628 (Wyo.1999). " 'Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Byerly v. Madsen*, 41 Wash.App. 495, 704 P.2d 1236 (1985).' " *Vaughn v. State*, 962 P.2d 149, 151 (Wyo.1998) (quoting *Martin v. State*, 720 P.2d 894, 897 (Wyo.1986)). *Winterholler*, 989 P.2d at 624–25 (quoting *Rogers v. State*, 971 P.2d 599, 601 (Wyo.

1999)); *see also Smith v. Paiz*, 2004 WY 14, ¶ 15, 84 P.3d 1272, ¶ 15 (Wyo.2004). In either situation, we have held that the following factors are relevant to the trial court's determination:

(1) whether allowing the evidence would incurably surprise or prejudice the opposing party;

(2) whether excluding the evidence would incurably prejudice the party seeking to introduce it;

(3) whether the party seeking to introduce the testimony failed to comply with the evidentiary rules inadvertently or willfully;

(4) the impact of allowing the proposed testimony on the orderliness and efficiency of the trial; and

(5) the impact of excluding the proposed testimony on the completeness of the information before the court or jury.

*Winterholler*, 989 P.2d at 628 (citing *Dada v. Children's National Medical Center*, 715 A.2d 904, 909 (D.C.1998)). The totality of the circumstances is considered when weighing these factors. *Smith*, ¶ 15 (quoting *Dada*, 715 A.2d at 909–10).

## DISCUSSION

[¶ 15] In her appeal Fetzer contends that the district court erred when it excluded Dr. Randolph's expert testimony and the accompanying exhibits. Her argument is two-

---

1. W.R.C.P. 16(f):

If a party or a party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C) and (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

The sanctions found at W.R.C.P. 37(b)(2)(B), (C) and (D) include: an order refusing to allow the disobedient party to support or oppose a particular claim or defense or prohibiting that party from introducing designated matters into evidence; an order striking out pleadings or parts of them, staying the proceedings until the disobedience is corrected, dismissal of the action or any part of it or the entry of a judgment by default; and/or an order of contempt against the offending party.

2. W.R.E. 403:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence.

pronged. First, she claims that Dayley had sufficient notice that Dr. Randolph would testify at trial about future medical expenses and the development of arthritis in Fetzer's knee that would eventually necessitate knee replacement surgery. Fetzer insists that notice was provided to Dayley through various court filings, including her pretrial memorandum, and the submittal of various exhibits before trial, including Dr. Randolph's note of the November 11 examination of Fetzer. Fetzer notes that Dayley did not object to these exhibits. Accordingly, Fetzer concludes that Dayley was not surprised, and the district court erred when it found otherwise. Second, she contends that the district court's remedy—the total exclusion of any evidence on future medical expenses—was too harsh. Fetzer argues that she was totally deprived of any opportunity to present her theory of the case, resulting in unfair prejudice to her and, consequently, an unfair trial.

[¶ 16] The record does not support Fetzer's contention on the question of notice. When Fetzer designated Dr. Randolph as an expert witness, she stated that he would testify "consistent with any deposition that he may give." Fetzer's designation of Dr. Randolph also stated that the doctor would testify as to future medical expenses, including joint replacement, and that Fetzer would have arthritis at the point of injury. However, in his deposition given on July 11, 2002, Dr. Randolph testified that Fetzer did not have arthritis at the point of injury at that time and that he could not "with any reasonable degree of specificity or medical probability" state that she would, in fact, develop such a condition in the future. Dayley reasonably relied upon Dr. Randolph's deposition testimony to conclude that it did not have to retain a medical expert for trial. Thereafter, Dr. Randolph changed this opinion after examining Fetzer on November 11, 2002. The only possible source of notice to Dayley of this change was Fetzer's pretrial memorandum, filed on November 14, 2002 along with Dr. Randolph's note of the November 11 examination. In that filing, Fetzer described Dr. Randolph's anticipated testimony at trial:

Dr. Randolph is expected to testify and offer his opinion concerning diagnosis, treatment and prognosis of the Plaintiff Rose Fetzer following her injury on July 9, 2001. Dr. Randolph is expected to testify utilizing his medical records as well as the medical records from the Washakie Medical Center in Worland, Wyoming. He is expected to testify as an orthopedic surgeon, concerning his communications with the patient and his observations of her. He will testify and offer his opinion regarding the severity of the injury and damage sustained by Rose Fetzer. He will also testify concerning future medical expenses including those for treatment, surgery and rehabilitation.

Dr. Randolph has been designated as a fact witness, but he is herein designated as an expert witness. As an expert in orthopedic surgery, he will testify concerning the transfer of the patient from Midway Clinic in Basin, his initial examination of Rose Fetzer, his impression and opinion of the injury together with its severity, the surgical procedure that he utilized, his consultations with Rose Fetzer, and her prognosis. He will testify concerning future medical expenses which Rose Fetzer may incur including joint replacement and the estimated cost of that joint replacement. He will also testify that Rose Fetzer has arthritis at the point of injury.

In the note, Dr. Randolph stated that there was evidence of post-traumatic arthritis and that Fetzer "may ultimately require total knee arthroplasty."

[¶ 17] Compare that language with that used in Fetzer's designation of fact witnesses, which was filed on September 16, 2002 after Dr. Randolph's deposition but before the examination that resulted in a change of his expert medical opinion:

Dr. Randolph will testify as the treating physician of Rose Fetzer. He has also been designated as an expert witness. He will testify concerning his examination, treatment, diagnosis and prognosis for Rose Fetzer. To all elements of damage including the extent of the injury, what treatment he undertook, and his opinion concerning future expenses, and future disability, if any, of Rose Fetzer. He will also

testify concerning the records from his office and he will also testify concerning the balance of, reasonableness and necessity of expenses incurred in his office. Dr. Randolph will testify concerning his examination, treatment, diagnosis and prognosis for Rose Fetzer. He will testify as to all elements of damage including the extent of injury, what he did to undertake treatment and his opinion concerning future permanent disability, if any. He will further testify to the necessity for the prescribed treatment.

There is no appreciable difference in the language between the two filings. The most that could be said is that the designation of fact witnesses used the qualifier "if any" while the pretrial memorandum contained declaratory statements with the exception of the reference to knee replacement, which was qualified by the use of the word "may." The point is, however, there is no specific language in the pretrial memorandum that would alert Dayley to the fact that the doctor's expert medical opinion had changed since the deposition was taken or since the designation of fact witnesses was filed. The burden of timely disclosing her evidence was on Fetzer. Dayley should not be expected to parse the language of court filings to determine whether Fetzer's expert witness had changed his medical opinion regarding knee replacement surgery and the development of arthritis in her knee. It was Fetzer's duty to explicitly and clearly convey that information to Dayley in as timely a manner as possible to allow for trial preparation. Fetzer did not do so until her opening statement at trial. Under the circumstances of this case, that was clearly a surprise to Dayley.

■ [¶ 18] Fetzer also challenges the district court's remedy. We conclude that the court did not abuse its discretion when it excluded all testimony and evidence related to future medical expenses for Fetzer's failure to timely disclose the change in her expert's medical opinion.

[¶ 19] We address this issue with the factors set out in the Standard of Review section of this opinion in mind. There is no question that the ruling excluding Fetzer's evidence relating to future medical expenses was incurably prejudicial to her: Fetzer was prevented from presenting her claim for damages to the jury and to that extent, the impact of excluding the proposed testimony on the completeness of the information before the jury was total. There is no indication in the record that Fetzer's failure to provide timely notice was willful. However, the effect of the court's ruling on Fetzer must be balanced by consideration of the impact of her failure to timely disclose the change in her medical expert's opinion on the opposing party and the court. As the district court noted in making it's ruling, Dayley had relied on Dr. Randolph's deposition testimony and had, therefore, not investigated the need to retain a medical expert. Since the change in Dr. Randolph's opinion was not disclosed until after trial had commenced, Dayley was placed in an impossible position. Their ability to respond to Fetzer's evidence was incurably prejudiced because they could not effectively respond to it once trial had started.

[¶ 20] Similarly, the district court noted that a continuance was impractical given the status of the proceedings. Obviously, once trial had commenced, the impact on the orderliness and efficiency of the trial of allowing the testimony coupled with the need to give Dayley a reasonable opportunity to respond would have been significant. We have noted before that, "the trial court [may] accord greater weight than previously allowed for prejudice caused by delay to the overall administration of justice." *Smith*, ¶ 15. Obviously, the closer to trial before evidence is disclosed, the greater the impact on the trial court's administration of its docket.

■ [¶ 21] Compare the situation confronted by the district court in this case with that in our decision in *Winterholler*. In that case, the plaintiffs retained a new medical expert witness after their original expert had to withdraw for health reasons. The plaintiffs inadvertently failed to give the defendant notice of the change in expert witnesses. The defendant learned of the substitution eight weeks before trial and moved to exclude his testimony. The district court granted the defendant's motion. On appeal, we reversed holding that the total exclusion

of the expert's testimony created greater prejudice to the plaintiff than that incurred by the defendant despite the surprise inherent in the failure to disclose because the defendant still had eight weeks before trial to prepare when he learned of the change of experts. 989 P.2d at 628. Here, Dayley had no opportunity to prepare for trial because the disclosure occurred after trial had commenced. When all of these factors are weighed together, we cannot say that the district court abused its discretion by concluding that the balance required the exclusion of Fetzer's expert medical testimony.[3]

[¶ 22] In its appeal in Case Number 03–156, Dayley requested that if the verdict and judgment were affirmed in Case Number 03–155, its appeal on the district court's jury instructions be dismissed. We hereby grant that request and dismiss the appeal in Case Number 03–156.

## CONCLUSION

[¶ 23] The district court did not abuse its discretion when it excluded evidence and testimony related to Fetzer's claim for future medical expenses because of her failure to timely disclose her medical expert's opinion testimony. Case Number 03–155 is affirmed, and Case Number 03–156 is dismissed.

---

3. Briefly, we note that Fetzer also claims that while she was prohibited from addressing future medical expenses, Dayley was allowed to elicit testimony from Dr. Randolph showing that her arthritis was not related to her injury. A review of the record shows that Dayley was allowed to question Dr. Randolph on the issue of whether a preexisting condition—rheumatoid arthritis—of Fetzer's was unrelated to her injury. Dayley notes that the questioning was necessary to prevent any confusion with the jury regarding the nature of Fetzer's injuries. We fail to see how this line of inquiry was prejudicial to Fetzer. It was not related to the question of future medical expenses; rather, it went to issues before the jury including the question of Fetzer's pain and suffering and what damages were appropriately attributable to her injury versus her preexisting condition. There was no error in Dayley's questioning of Dr. Randolph on this issue.