KAUTZ, Justice.
[¶1] Following a bench trial, the district court awarded the appellee, Samuel B. Kramer (Father), primary physical custody, and the appellant, Sarah McBride-Kramer (Mother) visitation, of the couple's daughter (the child). Mother appeals the order, arguing the district court abused its discretion when it refused to allow her to call one of the child's counselors, who had not been previously designated as a witness, to testify at trial. We affirm.
ISSUE
[¶2] Mother identified two issues on appeal; however, they involve the same ruling. Therefore, we distill Mother's issues to one:
Whether the district court abused its discretion when it refused to allow an undesignated witness to testify at trial.
FACTS
[¶3] Father and Mother were married on October 4, 2008, and the child was born in 2012. Toward the end of the marriage, Mother became convinced that Father was either sexually abusing the child or grooming her for future sexual abuse. Father denied abusing the child, but Mother's concerns eventually led to her leaving the family home and moving with the child to Mother's parents' home in Utah. Mother filed for divorce on February 24, 2016.
[¶4] Between the time Mother filed for divorce and the trial, the child was treated by seven counselors, the focus being whether the child was sexually abused. The child also was examined by emergency room staff who were informed of Mother's suspicions of sexual abuse. Mother reported the suspected abuse to the Utah and Wyoming Department of Family Services and twice to law enforcement. As part of both criminal and juvenile investigations, the child underwent two separate forensic examinations. It appears Mother's reports went unsubstantiated because a criminal or juvenile action was not filed against Father.
[¶5] Mother refused to allow Father any unsupervised visitation with the child after they moved to Utah. On May 3, 2016, Father filed a motion to establish temporary visitation. The district court held a hearing on that motion, considered the arguments of the parties, and ordered an unsupervised visitation schedule for Father. Mother, however, refused to abide by the terms of the order and insisted on a "transition period" for Father's visitation. Mother was present during each visit, usually staying overnight in Father's home with the child. She often arrived with the child several hours late for Father's visitation, and almost always took the child home early. Other times, she simply would not bring the child for visitation, claiming the child was ill or did not want to visit Father. On February 25, 2017, Mother called the Evanston Police Department to "keep the peace" when she arrived with the child four to five hours late. Mother asked the police officer to grant her permission to decline the visit because Father would act rudely to the *531 child. The officer informed Mother that she needed to comply with the visitation order.
[¶6] Father continuously requested that visitation occur in accord with the district court's order. However, the first overnight visit without Mother did not take place until March 10, 2017. On that day, Mother arrived at Father's house over three hours late, and again requested that law enforcement intercede. She explained "she was upset that her daughter had to go for [an] overnight visitation that she did not think she was ready for." The visit took place and Father's unsupervised visitation continued to take place thereafter.
[¶7] On October 29, 2017, Mother picked the child up from her visit with Father and again alleged that Father had abused the child. Father was interviewed for a third time, and the child underwent a third forensic interview. Because this additional investigation was ongoing, on November 17, 2017, Mother requested to continue the custody trial set for November 29 and 30, 2017. The district court observed that the claims in this investigation seemed to be more of the same claims that had been investigated before, denied Mother's request for a continuance, and the trial proceeded as scheduled. The record does not indicate this investigation ever resulted in any juvenile or criminal action.
[¶8] On the morning of the first day of trial, Mother requested that Heather Wyler, a counselor who had been treating the child since December 2016, be allowed to testify. Although Mother had listed other therapists who treated the child as potential witnesses at trial, Mother never listed Ms. Wyler as a potential witness in any capacity in her pretrial disclosures. Mother argued Ms. Wyler had obtained important and useful information from the child within the prior month, and that information had been provided to Father through two separate letters. Father objected to Ms. Wyler's testimony, stating that while he had received the letters, he did not have any of the child's treatment records from Ms. Wyler. The district court pointed out that it had ordered Mother's expert witnesses be designated by March 31, 2017, Mother had not designated Ms. Wyler at that time, and the order specifically stated that "[e]xpert witnesses not designated will be prohibited from testifying, absent consent of the Court for good cause shown." The court then explained that Mother's request for a continuance and the information Ms. Wyler would apparently testify about were simply a rehash of Mother's allegations of sexual abuse that had not been substantiated to date and did not constitute "good cause."
[¶9] During the trial, the court heard testimony from Mother, Father, Mother's parents, Father's brother, and a psychologist Mother had consulted about the child. Mother testified extensively about her concern that Father had either sexually abused or was going to sexually abuse the child. Father testified that he never abused the child and Mother's allegations were unfounded. Dr. Goldsmith, a psychologist that Mother had consulted with and designated as an expert, was called as a witness by Father. Dr. Goldsmith explained that the child could appear anxious around Father because she had been repeatedly asked questions about her father and abuse by many different people. Dr. Goldsmith expressed concern about the number of times the child had been examined for sexual abuse, explaining those exams also carry the risk of trauma to the child.
[¶10] The court also heard extensive testimony from both parties about Mother's unwillingness to comply with the temporary visitation order and the difficulties Father encountered in spending time with the child. After considering the testimony, the district court determined Father had not sexually abused the child, although it acknowledged that Mother believed otherwise. The court carefully considered each factor listed in Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2017).[1] The court found that both parents *532 love and are capable of caring and providing for the child. Mother's behavior towards Father and her continual interference with visitation, however, weighed heavily against Mother in the analysis. The court expressed concern that nothing would stop Mother from believing that Father abused the child, and that belief will prevent Mother from effectively communicating with Father or allowing and respecting Father's time with the child. For these reasons, the district court granted Father primary custody of the child and Mother visitation. Mother timely appealed the order.
STANDARD OF REVIEW
[¶11] Mother challenges the district court's decision to preclude Ms. Wyler's testimony at trial as a sanction for Mother's failure to designate Ms. Wyler as an expert witness as required by the court's scheduling order under Wyoming Rule of Civil Procedure 16. "[T]he law is clear that district courts have broad discretion to impose sanctions under the Wyoming Rules of Civil Procedure." Brown v. Brown , 2016 WY 120, ¶ 11, 385 P.3d 321, 324 (Wyo. 2016). Therefore, we review the court's decision to impose sanctions for an abuse of discretion. Id .
"A court abuses its discretion when it acts in a manner which exceeds the bounds of reason under the circumstances. The party who is attacking the trial court's ruling has the burden to establish an abuse of discretion, and the ultimate issue is whether the court could reasonably conclude as it did."
Three Way, Inc. v. Burton Enters., Inc. , 2008 WY 18, ¶ 16, 177 P.3d 219, 225 (Wyo. 2008) (quoting Doenz v. Sheridan County Bd. of County Comm'rs , 949 P.2d 464, 465 (1997) ).
[¶12] When considering whether a district court abused its discretion in prohibiting witness testimony after a Rule 16 violation, the following factors are relevant to the court's determination:
(1) whether allowing the evidence would incurably surprise or prejudice the opposing party;
(2) whether excluding the evidence would incurably prejudice the party seeking to introduce it;
(3) whether the party seeking to introduce the testimony failed to comply with the evidentiary rules inadvertently or willfully;
(4) the impact of allowing the proposed testimony on the orderliness and efficiency of the trial; and
(5) the impact of excluding the proposed testimony on the completeness of the information before the court or jury.
Fetzer v. J.D. Dayley & Sons, Inc ., 2004 WY 64, ¶ 14, 91 P.3d 152, 158 (Wyo. 2004).
DISCUSSION
[¶13] In her issue statement, Mother challenges the district court's decision not to allow Ms. Wyler to testify at trial about information obtained during her most recent counseling sessions with the child: "The District Court abused its discretion when it refused to allow expert witness testimony regarding the alleged sexual abuse of the Parties' minor child." However, in her argument, Mother attempts to expand her claim to challenge the final custody decision. She argues: "The District Court abused its discretion by awarding Father primary custody of the Parties' minor child without having heard the critical testimony of an expert witness for Mother." The issue Mother mentioned in her argument is not the same as the issue she listed in her issue statement. There is a substantial difference *533 between a challenge to a trial court's discretionary enforcement of pretrial requirements and a challenge to the trial court's final ruling in a case. Although both issues challenge a discretionary decision, the factors underlying those discretionary decisions are different.
[¶14] Based on the state of the record and the substance of Mother's argument, it is impossible for us to review the district court's final custody determination. Mother did not make an offer of proof regarding the substance of Ms. Wyler's proposed testimony; therefore, we cannot gauge what impact it may have had on the district court's consideration of the evidence. Mother designated Ms. Wyler's letters as exhibits she intended to use at trial, but after the district court determined Ms. Wyler would not testify, the exhibits were removed from the exhibit packet. We cannot glean the substance of Ms. Wyler's testimony from the letters because they are not in the record. The only mention of the content of Ms. Wyler's testimony is found in Mother's proposed findings of fact and conclusions of law that was filed two days before the trial began: "On November 7, 2017, after the allegations of abuse against Father and criminal investigation had began [sic], Ms. Wyler met with the minor child at which time the minor child discussed having a secret and being afraid someone would harm her or 'rip her stuffies apart.' " Mother bears the burden of providing a sufficient record to this Court on which a decision can be based. Erhart v. Evans , 2001 WY 79, ¶ 18, 30 P.3d 542, 547 (Wyo. 2001). Mother failed to do so with respect to the final custody decision. Further, Mother failed to provide any analysis discussing the district court's custody decision. Instead, her argument focuses solely on the fact that the court did not allow Ms. Wyler's testimony. Because Mother did not squarely present or address the issue and failed to provide a sufficient record, we will not consider whether the district court abused its discretion in granting Father primary custody of the child. We limit our consideration to whether the court abused its discretion when it did not allow Ms. Wyler to testify at trial.
[¶15] Wyoming Rule of Civil Procedure 16(b) establishes the procedure and requirements for scheduling orders. Subsection (b)(3)(A) requires that the district court establish deadlines for completing discovery, and subsection (b)(4) states the schedule may be modified "only for good cause and with the judge's consent."[2] The rule also allows a court to issue "any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorneys: ... (C) fails to obey a scheduling or other pretrial order." W.R.C.P 16(f). Wyoming Rule of Civil Procedure 37(b)(2)(A)(ii) specifically provides that a court may "prohibit[ ] the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence[.]"
[¶16] Here, the district court entered a scheduling order requiring Mother to designate fact witnesses on or before February 17, 2017, and expert witnesses on or before March 31, 2017. The scheduling order notified the parties that "witnesses not designated will be prohibited from testifying, absent consent of the Court for good cause shown." These dates and the possible sanction for failing to comply with the deadlines are consistent with the above-cited rules. Mother filed both of her designations by the required date. The designations included various healthcare providers, including counselors who had treated the child, but did not include Ms. Wyler who had been treating the child since December 2016. There is no dispute Ms. Wyler was not designated, and the district court imposed the sanction that was clearly stated in the scheduling order.
[¶17] Rule 16 states that the scheduling order may be modified "only for good cause and with the judge's consent."
*534 W.R.C.P. 16(b)(4).[3] Mother argues the importance of Ms. Wyler's testimony and the court's inability to render a "correct" decision without hearing the information is a sufficient basis to make an exception to the designation deadline in the scheduling order. This allegation alone falls short of demonstrating the district court's decision exceeded the bounds of reason under the circumstances. When we consider the factors outlined in our standard of review, it is clear the district court did not abuse its discretion.
[¶18] In reaching its conclusion, the district court acknowledged that Ms. Wyler's treatment of the child was not necessarily a surprise to Father or the guardian ad litem, but the information to which she would testify was unknown to them-a surprise. Surprise testimony from a known witness is a surprise nonetheless and potentially prejudicial to a party that does not have the opportunity to adequately address the testimony. See Fetzer , ¶ 17, 91 P.3d at 160. Mother acknowledges this difficulty in her brief: "Parties and their attorneys need adequate time to prepare proper defenses and possibly need time to prepare witnesses to counter any anticipated arguments. Allowing any last-minute witness to testify would be unfair and would likely lead to a much more chaotic hearing." Further, while Ms. Wyler's treatment of the child was not unknown, her status as a witness in this case certainly was a surprise. This factor supports the court's decision to exclude Ms. Wyler's testimony.
[¶19] We next consider whether excluding Ms. Wyler's testimony incurably prejudiced Mother. As previously discussed, this Court does not know what Ms. Wyler's testimony would have been.[4] The district court may have had a better understanding of the proposed testimony based on the two letters written by Ms. Wyler that were provided to Father and the district court, but those letters are not in the appellate record. However, it is clear her testimony would be related to the sexual abuse allegations against Father. Even without Ms. Wyler's testimony, Mother's testimony adequately conveyed that she believed Father was sexually abusing the child. Mother's parents also testified about behavior that Mother believed supported those allegations. The district court was abundantly aware of the allegations against Father making it unlikely Mother was "incurably prejudiced" without Ms. Wyler's testimony.
[¶20] Mother retained the services of four attorneys over the duration of this matter, and her attorney at the time of trial was not her attorney when the witness designations were due. Frequent changes in counsel can certainly complicate the efficient preparation of a case for trial. However, Mother's decision to wait until the first day of trial to seek permission for Ms. Wyler's testimony is problematic. Mother represents that the relevant information "was only discovered a week before the final hearing." It is not entirely clear what Mother means by this statement. It does not appear the district court held a final pretrial hearing in this matter, and an order from such a hearing is not in the record. Mother's pretrial memorandum lists the letters from Ms. Wyler as trial exhibits, and that memorandum was signed by counsel twenty days before the trial began-far more than one week as asserted by Mother. Despite the letters being designated as an exhibit, Mother still did not list Ms. Wyler as a potential witness in the pretrial memorandum. There is no dispute the witness designation dates had long *535 passed by this time, but Mother does not offer any explanation why she did not seek permission for Ms. Wyler's testimony before the first day of trial. This is particularly perplexing when we consider that Mother filed a motion the day before trial requesting that Ms. Wyler appear at trial by telephone. While the record does not necessarily show Mother willfully failed to comply with the scheduling order, it does not establish that the omission of Ms. Wyler was inadvertent.
[¶21] Ms. Wyler's testimony certainly would have impacted the orderliness and efficiency of the trial. To give all parties a fair opportunity at trial, a continuance of the matter would likely have been necessary. While Father had received the letters from Ms. Wyler, he had not received any other records pertaining to her treatment of the child over the past year. The district court had already determined a continuance of the matter was inappropriate when it denied Mother's emergency motion for a continuance twelve days before the trial began, and Mother has not appealed that order. This matter had been pending for almost two years, and the district court suggested the information Ms. Wyler had to offer was simply an extension of the various investigations into Father's behavior.
[¶22] Finally, we consider the impact excluding Ms. Wyler's testimony had on the completeness of the information before the district court. Again, it is difficult to weigh this factor because we do not know the substance of Ms. Wyler's testimony. Ms. Wyler was not the only witness who could provide expert testimony from psychological counseling. Rather, she was the seventh counselor Mother had taken the child to. There was a guardian ad litem in the case who would have presented any witness or evidence that he believed was essential to the district court's decision. Each side presented significant evidence, and the district court was well aware of the issues. Given the record, there is no indication that the district court lacked complete evidence to make a custody decision on. All five factors heavily weigh in favor of the district court's decision to bar Ms. Wyler from testifying at trial. The sanction was not an abuse of discretion in this circumstance.
[¶23] Mother further argues that the district court abused its discretion because under the doctrine of res judicata Mother will be forever prevented in future proceedings, such as a custody modification, from relying on the information Ms. Wyler would have discussed in her testimony. "Res judicata bars issues that were previously raised and considered, and also issues that 'could have been raised in an earlier proceeding' but were not." Goetzel v. State , 2017 WY 141, ¶ 7, 406 P.3d 310, 311 (Wyo. 2017). The purposes of the res judicata doctrine are to promote judicial economy and finality, prevent repetitive litigation, prevent inconsistent results, and increase certainty in judgments. 46 Am. Jur. 2d Judgments § 444 (Nov. 2018 Update). This doctrine applies to child custody orders, therefore, the party seeking a change to a custody order must demonstrate "a material change in circumstances since the entry of the order in question and that the modification would be in the best interests of the children pursuant to W.S. 20-2-201(a)." Wyo. Stat. Ann. § 20-2-204(c) (LexisNexis 2017) (emphasis added); see also Johnson v. Clifford , 2018 WY 59, ¶ 11, 418 P.3d 819, 823 (Wyo. 2018).
[¶24] Mother correctly points out that Ms. Wyler's testimony was available before the custody order was issued, therefore, a district court may likely find her testimony alone is insufficient to constitute a material change in circumstances. That reality, while unsatisfying to Mother, is a natural consequence of the sanction the district court imposed against her for failing to abide by the scheduling order. The whole point of this particular sanction is to prevent Mother from using evidence that was not properly disclosed. To conclude a district court abused its discretion in imposing this sanction because it would prevent a party from using the evidence in the future would defy the court's authority to impose the sanction in the first instance. The court did not abuse its discretion in excluding the evidence, no matter how that decision may affect the use of the evidence in future proceedings.
[¶25] Affirmed.

Wyo. Stat. Ann. § 20-2-201(a) states in relevant part:
(a) ... In determining the best interests of the child, the court shall consider, but is not limited to, the following factors:
(i) The quality of the relationship each child has with each parent;
(ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;
(iii) The relative competency and fitness of each parent;
(iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;
(v) How the parents and each child can best maintain and strengthen a relationship with each other;
(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;
(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;
(viii) Geographic distance between the parents' residences;
(ix) The current physical and mental ability of each parent to care for each child;
(x) Any other factors the court deems necessary and relevant.

The district court entered its scheduling order on December 28, 2016. The Wyoming Rules of Civil Procedure were significantly amended, and the new rules went into effect on March 1, 2017. The rule cited above reflects the language of the amended Rule 16. The former Rule 16 also mandated that a scheduling order shall not be modified "except by leave of the judge or a court commissioner upon a showing of good cause." W.R.C.P. 16(b)(8) (2016). The current wording of Rules 16(f) and 37 have also been changed, but the substance of the rules is the same as the version that existed when the court entered the order.

Mother's argument focuses on whether excluding Ms. Wyler's testimony resulted in a "manifest injustice." The "manifest injustice" standard is used to determine whether a district court should modify its order following a final pretrial conference. W.R.C.P. 16(e). That standard is not applicable here because the district court did not hold a final pretrial conference or issue a final pretrial order.

Mother asserts that "Ms. Wyler was prepared to testify that [the child] had, in fact, confided in her during a counseling session that she was sexually abused by her Father." However, the record citations provided by Mother do not support that assertion. The cited information states: "The information she is intending on testifying to was provided in two separate letters. Both of those letters, laying out exactly what she was planning on testifying to, have been provided to opposing Counsel." As stated above, those letters are not in the appellate record; therefore, this Court has no information that discloses with any specificity what Ms. Wyler's testimony would have entailed.